THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GAVINO BENITEZ, Defendant-Appellant.

First District (4th Division)   No. 1—93—2786

Opinion filed December 29, 1994.—Rehearing denied January 23, 1995.

---

[1]Justice Johnson concurred in the disposition of this appeal before his retirement.

Sam Adam and John R. DeLeon, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Julie Line Bailey, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

Defendant, Gavino Benitez, appeals from his conviction for murder and three counts of aggravated battery. He raises the following issues: (1) whether the court lacked jurisdiction over him because the indictment failed to properly charge him with any offense; (2) whether the court's findings were based upon a misapprehension of the evidence; and (3) whether he was otherwise proven guilty beyond a reasonable doubt. For the reasons which follow, we affirm.

On October 30, 1991, an assistant State's Attorney appeared before the grand jury and requested the following:

"a true bill against Alberto Pacheco [*sic*], Gavino Benitez and Javier Jiminez for the offenses of murder committed against Jose Montez and for the offenses of attempt murder, aggravated battery and armed violence committed against Ivan Amador on or

about the 13th of October 1991 near 32nd Street and 54th Avenue, in Cicero *** Illinois."

Evidence was produced in support of these allegations, and following deliberations, the grand jury foreman returned a "true bill" on all charges. However, on November 4, 1991, indictment No. 91—CR—26366 was issued, charging codefendant Alberto Pacheo alone with two counts of murder for the stabbing death of Jose Montez, and with attempted murder, armed violence, and two counts of aggravated battery as to "Marlo Lopez, by stabbing him [sic] in the hands" with a knife.

On November 27, 1991, defendant was given notice of an indictment against him. At his arraignment on December 3, 1991, the State requested leave to file another indictment under No. 91—CR—26366. Defendant raised no objection and waived formal reading of the document. This document charged Pacheo, Jiminez, and defendant with the October 13, 1991, murder of Montez, and with attempted murder, armed violence, and three counts of aggravated battery upon Amador. However, the grand jury had not reconvened prior to the issuance of this second indictment, and there is no record of any written motion to amend the original indictment.

Defendant now argues that neither of these instruments served to properly charge him because the first, while facially valid, omitted any reference to him, and the second, lacking the signatures of both the State's Attorney and the grand jury foreman, was apparently "never returned by the grand jury at all." Defendant also relies upon the testimony of Edwin Anderson, deputy clerk of the circuit court of Cook County, that grand jury records failed to show a true bill against defendant for murder.

■ In response, the State initially points out that defendant failed to properly object to the second indictment and thus should be found to have waived the issue. However, because waiver is a limitation on the parties but not upon this court (*People v. Sullivan* (1992), 234 Ill. App. 3d 328, 600 N.E.2d 457), we address this matter despite any waiver.

Defendant emphasizes that the first indictment must have been the proper indictment for the offense in this case because it bore the signatures of both the grand jury foreman and the State's Attorney and was otherwise facially valid. He reasons that the second indictment was void because it lacked both signatures. We disagree.

■ First, although the second document lacked the foreman's signature as provided under section 111—3(b) of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1991, ch. 38, par. 111—3(b)), it cannot be disputed that the grand jury returned a true bill against

defendant for the offenses charged therein. The transcript of proceedings shows that the assistant State's Attorney requested a true bill for the specific offenses charged in the second indictment, evidence was presented pertaining to them, and the foreman stated that a true bill would issue. Further, although deputy clerk Anderson could find no record of a true bill against defendant for murder, he admitted that the records showed that a true bill for some offenses was returned against defendant in October 1991.

An indictment must originate by action of the grand jury and no other entity. (See *People v. Kincaid* (1981), 87 Ill. 2d 107, 124, 429 N.E.2d 508; *People v. Strauch* (1910), 247 Ill. 220, 226-27, 93 N.E. 126.) Once the grand jurors concur that the evidence warrants a true bill, the State's Attorney must prepare the indictment to conform to the grand jury's finding and submit it for signature by the grand jury foreman. (See Ill. Rev. Stat. 1991, ch. 38, par. 112—4(d).) However, the foreman's signature is necessary only as a matter of direction to the clerk and for the information of the court; its presence or absence does not affect any substantial right of the accused, and its omission is not grounds for reversal. *People ex rel. Merrill v. Hazard* (1935), 361 Ill. 60, 63, 196 N.E. 827; *People v. Lamprey* (1979), 79 Ill. App. 3d 1065, 1069, 398 N.E.2d 1076; *People v. Wilson* (1972), 7 Ill. App. 3d 158, 161, 287 N.E.2d 211.

With regard to the necessity of the State's Attorney's signature, the Code is silent. Section 111—3(b) requires that an information contain the signature of the State's Attorney and that an indictment be signed by the foreman. (Ill. Rev. Stat. 1991, ch. 38, par. 111—3(b).) Under a prior enactment of section 111—3, this court held that in the absence of statutes to the contrary, it was not essential that an indictment be signed by the prosecutor. *Strauch*, 247 Ill. at 226-27.

In the case of the original indictment, it appears that the State's Attorney's office failed to prepare a document which conformed with the evidence considered by the grand jury. The document varied in several respects from the evidence presented at the grand jury proceedings; specifically, it named an improper victim and failed to name two alleged participants in the crime. The second document, under the same case number, reflected the precise allegations of the assistant State's Attorney at the grand jury proceedings, as well as the evidence upon which the true bill was returned. Thus, it was a proper charging instrument regardless of the absence of the foreman's signature or the signature of the State's Attorney.

Finally, defendant has failed to allege that he was surprised or prejudiced by the State's action in this case. The second document was issued well before trial, gave him full knowledge of the offense

for which he was being charged, and enabled him to prepare a defense. Thus, it was sufficient. See *People v. Clark* (1912), 256 Ill. 14, 99 N.E. 866.

Next, defendant raises several challenges to the sufficiency of the evidence. He argues that the trial court's findings were incorrect and demonstrate that the court misapprehended the evidence in this case. We disagree.

Defendant submitted to a joint bench trial with codefendant Pacheo, at which the following evidence was adduced.

Marlo Lopez testified that on the night of October 13, 1991, she was at her cousin Marcellino Toledo's apartment along with defendant, Pacheo, a third codefendant, Javier Jiminez, and several others. About 9:30 p.m., Lopez's boyfriend Amador arrived at the apartment with Montez, and asked Lopez to come outside. Lopez went out and walked with Amador to the corner where the two discussed ending their relationship. During this time, Montez remained near his car, which was parked about 12 to 15 feet from where Lopez and Amador were standing. Lopez testified that she heard a bottle break and turned and saw three individuals whom she identified as defendant, Pacheo, and Jiminez attacking Montez. She testified that Jiminez broke a bottle over Montez's head and that he and defendant punched and kicked him. Pacheo then approached with a large knife and began stabbing Montez in the left side of his stomach. She indicated that after Montez collapsed and fell to the ground, the three assailants turned on Amador, who was trying to help Montez. Pacheo attempted to stab Amador while defendant and Jiminez kicked and punched him. Lopez testified that she jumped on top of Amador to protect him, but that Pacheo managed to stab his hand. The assailants then left the scene, and Lopez ran inside and told her cousin to call the police. Lopez was later transported to the police station where she informed the police that the assailants were two unknown Hispanic males.

On October 16, 1991, Lopez returned to the police station and identified defendant and Pacheo from a photo array. She also identified Pacheo as the stabber in a lineup. Lopez testified that she had seen the knife used in the murder earlier that day in her cousin's bedroom.

On cross-examination, Lopez acknowledged that Amador was a member of a street gang and that defendant and Pacheo belonged to a rival gang. Lopez further testified that when she agreed to go with Amador to the corner, she anticipated that they would argue; however, she denied asking those remaining in the apartment to "watch out for her" when she went outside with him. Lopez admitted

that when she first talked to police on October 13, 1991, she had lied about certain aspects of the occurrence.

On redirect, Lopez testified that she decided to come forward with the truth shortly after her first talk with police, and that she also told the true story before the grand jury.

Amador testified that on the night of the occurrence, he went to Toledo's apartment with Montez. He testified that immediately prior to the stabbing, he was talking to Lopez on the corner when he noticed three men surrounding Montez. Jiminez struck Montez over the head with a bottle while defendant kicked and beat Montez around his face and stomach. As Montez tried to defend himself, Pacheo approached with a knife and stabbed him in the back. Amador described the knife's blade as eight or nine inches long. After Montez collapsed on the ground, defendant, Pacheo, and Jiminez approached Amador and began beating him. According to Amador, both Pacheo and Jiminez were also trying to stab him, Pacheo with the knife and Jiminez with a broken bottle. After stabbing Amador in the hand and arms, the three assailants fled. Amador testified that police subsequently arrived but that he did not talk to them at that time, because Montez was still breathing and Amador wanted to get him to the hospital. Later, Amador gave the police descriptions of Pacheo and Jiminez, but was unable to describe the third assailant. Amador identified Pacheo in a lineup as the man with the knife.

On cross-examination, Amador admitted he was a member of a street gang but denied that Montez was a gang member. He maintained that the fight began for no apparent reason.

The State then called Ramses Mejias, who testified that on the night of the occurrence, he was at the apartment with defendant, Pacheo, and others. However, Mejias denied defendant or Pacheo ever went outside, or that anything else occurred. Thereafter, the State began to lay a foundation to impeach Mejias with his prior grand jury testimony. The defense objected and the court conducted a suppression hearing to determine if Mejias' testimony before the grand jury was voluntary. After the hearing, the trial court found that Mejias' grand jury testimony had been given voluntarily, and the State continued its direct examination. Mejias admitted to testifying that he saw defendant and Jiminez fighting with one man and Pacheo stabbing another. He also admitted that he had identified photographs of defendant and Pacheo while at the police station and had identified Pacheo in a lineup. Mejias maintained that his grand jury testimony was the same story he had given to police and that it was untrue. He testified that he had given his prior account solely because police threatened to prosecute him for the murder.

Testifying on his own behalf, defendant stated that on the night of the occurrence, he had been in an apartment with Toledo, Lopez, Pacheo, and others, drinking beer and watching television. He testified that a man had knocked on the window and that Lopez had subsequently gone outside. Defendant testified that before going out, Lopez told Jiminez to watch her because she feared that Amador would hit her. Defendant later went outside, but denied that any fight took place or that he ever stabbed or assisted in the stabbing of Montez or in any battery upon Amador.

Following the State's rebuttal testimony, the court found defendant guilty of first degree murder and aggravated battery. He received concurrent sentences of 20 years' imprisonment for murder and five years' imprisonment for aggravated battery. Defendant then filed a post-trial motion and a motion to vacate his conviction. Following an evidentiary hearing, both motions were denied.

●3 Defendant argues that the trial judge misapprehended the evidence, as manifested by certain remarks relating to the law of self-defense. It is true that defendant made no such claim in his testimony. However, as the State points out, he did in fact raise the issue of self-defense in his response to discovery, and he orally amended that response at trial to include defense of others. Further, during cross-examination of Amador and Mejias, defense counsel repeatedly attempted to elicit testimony showing that defendant's actions were in defense of others. The trial court's analysis, though extensive, was not unwarranted, and defendant's claim is without merit.

●4 Defendant also argues that the evidence presented did not sustain his conviction. When faced with a challenge to the sufficiency of the evidence, the relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) In reviewing this case, it must be borne in mind that the testimony of only one credible witness may suffice to sustain a conviction. *Collins*, 106 Ill. 2d 237; *People v. Loferski* (1992), 235 Ill. App. 3d 675, 682, 601 N.E.2d 1135.

In the case at bar, there were two direct witnesses to the occurrence, Lopez and Amador, who gave similar testimony. These witnesses clearly provided sufficient evidence to sustain the convictions. Defendant argues that Lopez's testimony was "practically worthless because she originally gave false descriptions of the perpetrators." However, it was the trial court's function to resolve these inconsistencies. (*Collins*, 106 Ill. 2d 237.) In her testimony, Lopez admitted to

initially being untruthful to police because she was trying to protect defendant and was scared. Within several days, she came forward of her own volition with the correct story. The court could properly have believed her testimony.

●5 Defendant also argues that he was not shown to be accountable for the murder of Montez, because there was no evidence of a common plan or scheme. We disagree. A person is accountable for the offense of another if, with the intent to promote or facilitate the commission of the offense, he solicits, aids, abets, agrees or attempts to aid the other person in the commission of the offense. (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c).) The evidence here showed that defendant continued to beat Montez after Jiminez broke a bottle over his head and after Pacheo approached with the knife and began stabbing him. Defendant then proceeded to attack Amador after Montez collapsed on the ground, and later fled the scene. From these facts, it can be inferred that defendant intended to aid in the commission of the stabbing. See *People v. Reid* (1990), 136 Ill. 2d 27, 554 N.E.2d 174; *People v. J.H.* (1990), 136 Ill. 2d 1, 554 N.E.2d 961.

For the foregoing reasons, the judgment of the circuit court is affirmed. As part of our judgment, we grant the State's request for $100 for defending this case (*People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194), and for $50 for oral argument. *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319.

Affirmed.

JOHNSON[1] and THEIS, JJ., concur.

---

[1]Justice Johnson concurred in the disposition of this appeal before his retirement.