(No. 78579.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GAVINO BENITEZ, Appellant.

*Opinion filed January 18, 1996.*

HARRISON, J., took no part.

Sam Adam and John R. De Leon, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb, Susan R. Schierl and Julie Line Bailey, Assistant State's Attorneys, of counsel), for the People.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Gavino Benitez, was convicted of first degree murder and aggravated battery following a bench trial in the circuit court of Cook County. The appellate court affirmed his convictions. (269 Ill. App. 3d 182.) We granted defendant's petition for leave to appeal (145 Ill. 2d R. 315) to address his claim that the circuit court lacked jurisdiction over him because he was never properly charged with any offense. Specifically, defendant asserts that the grand jury never returned an indictment against him for the charged offenses.

## FACTS

On October 30, 1991, an assistant State's Attorney appeared before the October 1991 grand jury and requested "a true bill" against Alberto Pacheo, Gavino Benitez, and Javier Jimenez "for the offenses of murder committed against Jose Montez and for the offenses of attempt murder, aggravated battery and armed violence committed against Ivan Amador" on or about October 13, 1991. Evidence was produced in support of these allegations. The grand jury deliberated in private. Afterwards, the grand jury foreperson returned and stated, "true bill."

Indictment number 91—CR—26366 was issued and signed by the grand jury foreperson and the State's Attorney. Notably, this indictment charged Alberto Pacheo alone with the first degree murder of Jose Montez and with the attempted murder, armed violence, and aggravated battery of "Marlo Lopez [sic]." The indictment made no mention of defendant or his codefendant Javier Jimenez. It also wrongly listed Marlo Lopez as the

surviving victim. The actual surviving victim was Ivan Amador. Marlo Lopez was a witness who had testified at the grand jury proceedings. This indictment was filed in the circuit clerk's office on November 4, 1991.

Despite the omission of defendant's name on the indictment, on November 27, 1991, the State's Attorney's office notified defendant by letter that a grand jury had returned indictment 91—CR—26366 against him on October 30, 1991. Arraignment was set for December 3, 1991.

Defendant appeared at the December 3, 1991, arraignment with counsel. Codefendant Alberto Pacheo also appeared. The circuit court granted the State leave to file indictment 91—CR—26366. The State tendered copies of this indictment to defense counsel.

As tendered to defense counsel, indictment 91—CR—26366 now charged defendant, along with Alberto Pacheo and Javier Jimenez, with the first degree murder of Jose Montez and with the attempted murder, aggravated battery, and armed violence of Ivan Amador on or about October 13, 1991. This second indictment did not bear the signature of the grand jury foreperson or the State's Attorney. The charges set forth in the second indictment precisely tracked the evidence that the State's Attorney's office had presented to the grand jury. The grand jury had not reconvened prior to the issuance of the second indictment, and there is no record of any motion to amend the original indictment.

Defense counsel acknowledged receipt of the second indictment when it was tendered to him in court. At that time, he also entered a plea of not guilty to the charges.

Defendant's bench trial began 13 months later in January 1993. On the second day of trial, after commencement of the State's case in chief, defense counsel alerted the circuit court that "it ha[d] just come to [his]

attention that the indictment in this case \*\*\* does not contain the name of Gavino Benitez." Defense counsel referred the court to the first indictment, filed on November 4, 1991, which named only Alberto Pacheo. Defense counsel stated that he wanted to obtain the original document and the grand jury transcript to confirm whether the grand jury had in fact returned an indictment against defendant. Defense counsel agreed to allow the trial to proceed with the understanding that he was "not waiving anything."

When the issue was revisited and argued during trial, the circuit court ruled that the second indictment, naming all three codefendants, was valid. The court later adjudged defendant guilty of first degree murder and aggravated battery.

Defendant filed a post-trial motion to vacate his convictions, claiming they resulted from a void and invalid indictment. The circuit court conducted an evidentiary hearing on the matter, in which some of the above facts were revealed.

Additionally, at the evidentiary hearing, defendant called Edwin Anderson, a supervisor in the circuit clerk's office. Anderson testified that a grand jury hears evidence presented to it by the State's Attorney's office. If the grand jury returns a "no bill," the result would be no charges. On the other hand, a "true bill" returned by the grand jury is a determination that certain charges will be brought against certain individuals. Books and records with respect to no bills and true bills are kept by the office of the clerk. Anderson examined these records. The record entitled *Clerk's Journal, Grand Jury for October, November of 1991* indicates that a true bill was returned against defendant Gavino Benitez on the three charges of attempted murder, aggravated battery, and armed violence, but not for murder. One of the grand jurors herself, the secretary of the October 1991

grand jury, made this entry in the clerk's journal. Anderson testified that he diligently searched the entire records of the clerk's office and was unable to find any record showing that a true bill had been returned against defendant Gavino Benitez for the charge of murder.

The parties stipulated that Gary A. Pines, the foreperson of the October 1991 grand jury, would testify that he signed the first indictment on or about October 30, 1991. That grand jury then ceased to exist on the last day of October 1991. To the best of his knowledge and belief, he always signed the true bills returned by the grand jury, and no true bill was returned by the grand jury which did not bear his signature.

The parties also stipulated that the assistant State's Attorney who supervised the grand jury unit would testify that he was familiar with the established customs and procedures of the October 1991 grand jury. When the grand jury foreperson announced "true bill" at the end of the grand jury deliberations, he meant that a true bill was voted against all three defendants as requested by the State's Attorney's office. Any no bill issued as to any of the charges would have been specifically delineated. Significantly, this assistant State's Attorney would also testify that the second indictment was prepared by secretaries in his unit of the State's Attorney's office. He offered no further details on the circumstances surrounding the preparation of the second indictment.

During oral argument on the motion to vacate, the State claimed that there simply had been a mistake in the paper work. The State asked the court to disregard the first indictment and to find the second indictment valid. The State emphasized that the second indictment precisely tracked the evidence that was presented to the grand jury, as confirmed by the grand jury transcript. An assistant State's Attorney argued as follows:

"The paper work occurs, the State's Attorney's Office prepares the Indictment charging one person, then they prepare a piece of paper work charging three people with Murder two months later.

They prepared two documents, one they prepare in October or shortly after, maybe early November, but it's again according to normal procedures of the Grand Jury Unit of the State's Attorney's Office. The paper work is prepared after the vote of the Grand Jurors.

They make a mistake, corrected copy, this is garbage.
\*\*\*
Who cares that the wrong person was charged in the document that we didn't proceed on.
\*\*\*
Suppose they charged President George Bush in this document, does that make the other document void?"

The circuit court denied defendant's post-trial motion to vacate his convictions. The court found that, according to the grand jury transcript, the grand jury had voted a true bill against defendant for the first degree murder of Jose Montez and the attempted murder, aggravated battery, and armed violence of Ivan Amador. The court concluded that the second indictment upon which defendant was arraigned and tried properly charged and informed him of the nature and elements of the charges; therefore, it was not subject to attack as void.

The appellate court affirmed, agreeing with the circuit court's findings. (269 Ill. App. 3d at 184-86.) The appellate court further found the second indictment to be "a proper charging instrument." 269 Ill. App. 3d at 185.

## ANALYSIS

Defendant contends that neither of the two indictments served to charge him properly because the first omitted any reference to him and the second was never returned by the grand jury at all. He therefore claims that the circuit court lacked jurisdiction over him and,

as a result, his convictions must be vacated as null and void.

In response, the State maintains that the first indictment was a mistyped document, which should be considered superfluous by this court. The State urges us to focus instead on the second indictment, which, the State asserts, was entirely and independently valid.

The facts of this case are so unique that we must seek guidance from fundamental principles of criminal law. The grand jury originated in England, possibly during the reign of King Henry II. At common law, the function of the grand jury was to investigate crimes and to act as a buffer between the prosecutor and the accused so that citizens were protected from unsubstantiated accusations of the government or the personal disdain of the prosecutor. (*United States v. Calandra* (1974), 414 U.S. 338, 343, 38 L. Ed. 2d 561, 568-69, 94 S. Ct. 613, 617.) Although many jurisdictions have abolished the grand jury, it endures in Illinois.

Article I, section 7, of the Illinois Constitution of 1970 states:

"No person shall be held to answer for a criminal offense unless on indictment of a grand jury, except in [certain delineated cases.] The General Assembly by law may abolish the grand jury or further limit its use."

Pursuant to this constitutional provision, the General Assembly enacted legislation allowing felony prosecutions to be commenced either by an indictment or an information. Ill. Rev. Stat. 1991, ch. 38, pars. 111—1, ·111—2.

According to the statute, an indictment is to be signed by the foreperson of the grand jury, and an information is to be signed by the State's Attorney. (Ill. Rev. Stat. 1991, ch. 38, par. 111—3(b).) The statute thus impliedly recognizes that an indictment originates by action of the grand jury, whereas an information originates with the State's Attorney. (*People v. Kincaid*

(1981), 87 Ill. 2d 107, 123-24.) In either event, an accused is to be afforded a prompt probable-cause determination of the validity of the charge. (*People v. Kline* (1982), 92 Ill. 2d 490, 501.) An indictment is prepared following a probable-cause determination by a grand jury. (See Ill. Rev. Stat. 1991, ch. 38, par. 112—4(d); *Kline*, 92 Ill. 2d at 501.) In contrast, where an information is filed, a prompt preliminary hearing is held to determine if probable cause exists. *Kline*, 92 Ill. 2d at 501; see Ill. Rev. Stat. 1991, ch. 38, par. 111—2(a).

The State's Attorney's office did not file an information charging defendant with the offenses involved here. This case concerns only the propriety of the purported indictments.

As earlier noted, the State's position is that the first indictment was a mistyped document which should be considered superfluous, and that the second indictment was entirely and independently valid. The parties agree that the second indictment was never signed by the grand jury foreperson or the State's Attorney, but apparently disagree on the significance of the absence of the signatures. Defendant points to two statutory sections which state that the grand jury foreperson "shall" sign the indictment. (Ill. Rev. Stat. 1991, ch. 38, par. 112—4(d); ch. 78, par. 17.) In response, the State cites cases in which this court held that the absence of such signatures did not require reversal of a defendant's conviction. (*People ex rel. Merrill v. Hazard* (1935), 361 Ill. 60, 62-63 (holding that the failure of a grand jury foreperson to sign an indictment does not mandate reversal as the relevant statute was merely directory in nature), citing Ill. Rev. Stat. 1933, ch. 78, par. 17; *People v. Strauch* (1910), 247 Ill. 220, 226-27 (stating that the prosecutor's signature is not essential in the absence of a statute to the contrary).) We agree with the State that the mere absence of signatures is not fatal to an

otherwise valid indictment. This case, however, involves much more than missing signatures. *Cf. Hazard*, 361 Ill. 60; *Strauch*, 247 Ill. at 226-27; see also *People v. Hangsleben* (1969), 43 Ill. 2d 236; *People ex rel. Kelley v. Frye* (1968), 41 Ill. 2d 287, 290-91.

Here, an earlier indictment was signed by the grand jury foreperson and the State's Attorney. This initial indictment made no mention of defendant at all. Rather, it charged Alberto Pacheo alone with the first degree murder of Jose Montez and with the attempted murder, armed violence, and aggravated battery of "Marlo Lopez [*sic*]." Much later, someone in the State's Attorney's office apparently determined that this initial indictment was in error, and secretaries in that office prepared a second indictment to correct the perceived error. This second indictment charged defendant and both of his codefendants with the murder of Jose Montez and with the attempted murder, aggravated battery, and armed violence of Ivan Amador. This second indictment was never signed by the grand jury foreperson or the State's Attorney. The grand jury had not reconvened between the issuance of the first and second indictments. Moreover, the State's Attorney's office never filed a motion in the circuit court requesting permission to amend the original indictment. (See Ill. Rev. Stat. 1991, ch. 38, par. 111—5.) In short, the State's Attorney's office itself amended the initial indictment, which had already been endorsed by the grand jury foreperson, without resubmitting it to the grand jury and without filing a motion in the circuit court for permission to amend. The amendment consisted of adding two defendants and changing the name of a victim. Furthermore, at the evidentiary hearing, it was stipulated that the grand jury foreperson would testify that he had signed the initial indictment, and that no true bill was returned by the grand jury which he did not sign. A supervisor in the circuit

clerk's office testified that he reviewed the entire records of the clerk's office, but was unable to locate any record showing that a true bill had been returned against defendant for the charge of murder. The relevant clerk's journal indicates that a true bill was returned against defendant for the charges of attempted murder, aggravated battery, and armed violence, but not for murder. One of the grand jurors herself made this entry in the clerk's journal. Given all these facts, we are not willing to find that the first indictment was merely a mistyped, superfluous document.

We also cannot condone the State's actions with regard to the preparation of the second indictment. The rule is well settled that once an indictment has been returned by the grand jury, it may not be broadened through amendment except by the grand jury itself. (*People v. Kincaid* (1981), 87 Ill. 2d 107, 124.) The reason for this rule is to ensure that citizens' rights are not at the mercy or control of a prosecutor. *Kincaid*, 87 Ill. 2d at 124.

An exception to this rule exists for correcting merely formal defects in a charge. Section 111—5 of the Code of Criminal Procedure of 1963 provides:

"Formal Defects in a Charge. An indictment, information or complaint which charges the commission of an offense in accordance with Section 111—3 of this Code shall not be dismissed and may be amended on motion by the State's Attorney or defendant at any time because of formal defects, including:

(a) Any miswriting, misspelling or grammatical error;

(b) Any misjoinder of the parties defendant;

(c) Any misjoinder of the offense charged;

(d) The presence of any unnecessary allegation;

(e) The failure to negative any exception, any excuse or proviso contained in the statute defining the offense; or

(f) The use of alternative or disjunctive allegations as to the acts, means, intents or results charged." (Ill. Rev. Stat. 1991, ch. 38, par. 111—5.)

Formal defects can be corrected on motion by the State's Attorney or the defendant at any time, provided there is no resulting surprise or prejudice to the defendant. (Ill. Rev. Stat. 1991, ch. 38, par. 111—5; see *People v. Jones* (1973), 53 Ill. 2d 460, 465.) The list of formal defects in section 111—5 is not exclusive. (*Jones*, 53 Ill. 2d at 465.) For example, the misnomer of a victim in an indictment has also been found to be a formal defect. *Jones*, 53 Ill. 2d at 465.

In this case, however, the State did not follow either of those accepted methods for altering the indictment. It is undisputed that the State did not return the initial, endorsed indictment to the grand jury for correction. Nor did the State file a motion to amend the initial indictment in the circuit court pursuant to section 111—5.[1] Rather, the State arrogated for itself the power to amend the indictment as it saw fit. Secretaries in the State's Attorney's office prepared the second indictment to replace the first indictment. The second indictment added two new defendants and changed the name of a victim. We cannot sanction such a practice. Assistant State's Attorneys and their staff do not have the authority to amend grand jury indictments at will. Accordingly, we find that the second indictment was not valid as to the present defendant. Because the initial indictment failed to name defendant and the second indictment was not valid, defendant was never properly charged with any offense.

Having found that defendant was never properly charged with any crime, we next determine the proper remedy. Defendant insists that his convictions must be vacated as null and void. He asserts that the circuit

---

[1]We need not address whether the amendments to the initial indictment were formal or substantive under the facts of this case because the issue was never raised in a proper motion to amend.

court lacked jurisdiction over him because he was never charged with any offense. We disagree that this issue may be resolved on jurisdictional grounds. Defendant fails to acknowledge the principle of Illinois jurisprudence, in effect since this court's decision in *People v. Gilmore* (1976), 63 Ill. 2d 23, 26, that jurisdiction is not conferred by information or indictment, but rather by constitutional provisions. Accordingly, a charging instrument which fails to charge an offense does not deprive the circuit court of jurisdiction. (*Gilmore*, 63 Ill. 2d at 27.) The holding in *Gilmore* has often been reaffirmed by this court. (See, *e.g.*, *In re M.M.* (1993), 156 Ill. 2d 53, 74 (Miller, J., concurring) (noting the majority's *sub silentio* reaffirmation of *Gilmore*); *People v. Pankey* (1983), 94 Ill. 2d 12, 17, 20-27 (a three-justice plurality reaffirms *Gilmore*).) We again reaffirm *Gilmore* today. Therefore, the invalid indictment in this case did not deprive the circuit court of jurisdiction.

The State's position is that defendant's convictions should stand because he cannot demonstrate that he suffered any prejudice as a result of being arraigned and tried under the second indictment. The State cites *People v. Lawson* (1977), 67 Ill. 2d 449, 455, and *People v. Burrows* (1992), 148 Ill. 2d 196, 223, in support of its argument. In *Lawson*, this court held that a trial court has the inherent authority to dismiss an indictment in a criminal case where there has been a clear denial of due process, even though the denial of due process is not a stated ground for dismissal in the statute providing for motions to dismiss. (*Lawson*, 67 Ill. 2d at 454-56, citing Ill. Rev. Stat. 1973, ch. 38, par. 114—1.) To support a motion to dismiss an indictment on due process grounds, a defendant must show both actual and substantial prejudice. (*Burrows*, 148 Ill. 2d at 223.) The State then asserts that defendant cannot show prejudice, given that he was arraigned upon precisely the same charges as

those for which he was tried and that he apparently was not even aware of the first document until after trial had begun. The State further insists that the second document properly reflected the finding of the grand jury and that it adequately apprised defendant of the charges.

We reject the State's argument. The actual and substantial prejudice standard does not apply here, for the reasons set forth below.

The timing of a defendant's challenge to a charging instrument that fails to state an offense has been considered significant in determining whether a defendant is entitled to reversal of his conviction on that ground. In *People v. Gilmore* (1976), 63 Ill. 2d 23, this court held that, when an information or an indictment is attacked for the first time on appeal, it is sufficient if it "apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecutions arising out of the same conduct." (*Gilmore,* 63 Ill. 2d at 29; see also *People v. Pujoue* (1975), 61 Ill. 2d 335, 339.) The court in *Gilmore* specifically reserved the issue of whether this same standard would apply where a charging instrument is first challenged for its failure to charge an offense in the trial court through a post-trial motion in arrest of judgment (Ill. Rev. Stat. 1991, ch. 38, par. 116—2) or a pretrial motion to dismiss (Ill. Rev. Stat. 1991, ch. 38, par. 114—1). (*Gilmore,* 63 Ill. 2d at 29.) Generally speaking, these are the two types of motions that should be utilized to challenge a charging instrument for its failure to charge an offense.

Subsequent to *Gilmore,* the legislature determined that, where a charging instrument is challenged for its failure to charge an offense for the first time after trial, in a timely motion in arrest of judgment filed in the trial court, the prejudice standard of *Gilmore* applies.

258

The statute providing for motions in arrest of judgment was amended in 1989 to add subsection (c). That statute now provides in full:

"Motion in arrest of judgment. (a) A written motion in arrest of judgment shall be filed by the defendant within 30 days following the entry of a verdict or finding of guilty. Reasonable notice of the motion shall be served upon the State.

(b) The court shall grant the motion when:

(1) The indictment, information or complaint does not charge an offense, or

(2) The court is without jurisdiction of the cause.

(c) *A motion in arrest of judgment attacking the indictment, information, or complaint on the ground that it does not charge an offense shall be denied if the indictment, information or complaint apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct.*" (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 116—2, as amended by Pub. Act 86—391, § 1, eff. August 30, 1989, superseding in relevant part *People v. Smith* (1984), 99 Ill. 2d 467, 474-75, and *People v. Lutz* (1978), 73 Ill. 2d 204, 209-10.)

The language of this statute now duplicates the language in *Gilmore*. (See *Gilmore*, 63 Ill. 2d at 29.) Thus, the legislature has expressed its intent to adopt the prejudice standard set forth in *Gilmore* where a motion in arrest of judgment is filed which attacks the charging instrument on the ground that it does not charge an offense.

In contrast, where the sufficiency of a charging instrument is challenged before trial in a motion to dismiss, the rule requiring that a defendant show prejudice (*Gilmore*, 63 Ill. 2d at 29) does not apply. (*People v. Thingvold* (1991), 145 Ill. 2d 441, 448.) The proper remedy in that instance is a dismissal of the charging instrument or, if a trial has wrongly proceeded, a reversal of

the defendant's conviction. See *Thingvold*, 145 Ill. 2d at 448-49; Ill. Rev. Stat. 1991, ch. 38, par. 114—1.

This case does not fall within any of the situations described above. Defendant here initially raised the indictment issue on the second day of his trial. At that time, defense counsel asserted that he had just been informed of the existence of the original indictment. Defense counsel agreed to allow the trial to proceed with the understanding that the issue was not waived. The issue was revisited later during the trial, with the circuit court ruling against defendant. Defendant raised the issue again in his post-trial motion to vacate the convictions, which the circuit court denied. The State does not now assert that defendant has in any way waived the issue. Given all these circumstances, we find that this case is not governed by the rule set forth in *Gilmore*, as that rule applies where an information or an indictment is attacked for the first time on appeal. We further find that this case is not governed by the amended statute on motions in arrest of judgment, as that statute applies where a charging instrument is attacked for the first time following trial. We hold that, under the unique circumstances of this case, defendant is not required to show that he sustained prejudice to warrant reversal of his convictions. Our holding is consistent with this court's decision in *Thingvold*, where it was determined that reversal of the defendant's convictions was the proper remedy. (See *Thingvold*, 145 Ill. 2d at 448-49.) Our holding is also consistent with the statute on motions to dismiss. (Ill. Rev. Stat. 1991, ch. 38, par. 114—1.) That statute provides for waiver where challenges to a charging instrument are not raised within a reasonable time after arraignment in a proper motion to dismiss. (Ill. Rev. Stat. 1991, ch. 38, par. 114—1(b).) However, the statute specifically provides an exception to this waiver rule where, as here, the charging

260

instrument is being challenged on the ground that it does not state an offense. (Ill. Rev. Stat. 1991, ch. 38, pars. 114—1(a)(8), (b).) We therefore reverse defendant's convictions due to the State's failure to charge him properly with any offense.

We note in closing that double jeopardy principles do not bar the State from proceeding against defendant anew with a proper charging instrument. (See *Ball v. United States* (1896), 163 U.S. 662, 41 L. Ed. 300, 16 S. Ct. 1192; *Thingvold*, 145 Ill. 2d at 450; *People v. Moore* (1984), 121 Ill. App. 3d 571.) The evidence presented against defendant was sufficient to sustain the charges.

The judgments of the appellate court and the circuit court of Cook County are reversed.

*Judgments reversed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.