2023 IL App (1st) 211436-U
No. 1-21-1436

FIRST DIVISION
October 10, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19 CR 0909 |
| | ) | |
| WILLIAM JOHNSON, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Lawrence E. Flood, |
| | ) | Judge Presiding. |

JUSTICE Pucinski delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held:* The trial court properly denied defendant's motion to dismiss the indictment where the indictment did not violate the statute of limitations and the State properly pled the applicable statute of limitations.

¶ 2    After a bench trial, defendant, William Johnson, was convicted of one count of criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 1994)) and sentenced to 12 years in the Illinois Department of Corrections. On appeal, defendant argues that the trial court erred in denying his pre-trial motion to dismiss the indictment because the State did not properly plead the statutory provision for

extending the general statute of limitations, and the State did not prove all these provisions at trial. We affirm defendant's conviction for criminal sexual assault.

¶ 3                                    BACKGROUND

¶ 4        Defendant was originally charged with *two counts* of aggravated criminal sexual assault *(720 ILCS 5/12-14(a)(4))(West 1994))*. The indictment set out the elements for *these offenses*. The indictment also alleged that the general statute of limitations should be extended:

>    "…pursuant to 720 Illinois Compiled Statutes for Act 5 Section 3-5(2) in that T.R.
>    reported the offense to law enforcement authorities within two (2) years after the
>    commission of the offense and the DNA profile of [defendant] was obtained and
>    entered into a DNA database within ten (10) years after the commission of the
>    offense and the identity of the offender was unknown after a diligent search by law
>    enforcement authorities."

¶ 5        Prior to trial, defendant waived his right to an attorney and proceeded to represent himself. Defendant filed a *pro se* motion to dismiss the indictment for violating his due process rights. He argued that the indictment was brought more than three years after the offense, in violation of 720 ILCS 5/3-5(b), and more than 30 days after he was taken into custody, in violation of 720 ILCS 5/109-3.1(b). Defendant argued that this offense allegedly occurred on April 26, 2008, he was taken into custody on December 14, 2018, and an indictment was filed on January 16, 2019.

¶ 6        On September 26, 2019, the trial court held a hearing. Defendant argued that he was not charged within the three-year statutory limitations period. He further alleged that "I caught this case - - this case was alleged to happen in 2008, and those laws that applied then is the laws that apply now for this - - for the sentencing of this case for the charging of this case. It's not retroactive. That laws that have changed do not apply to me…"

¶ 7      In response, the State argued that, while a general statute of limitations for a felony offense is three years, however, pursuant to 720 ILCS 5/3-5 (2), there are certain circumstances allowing for the extension of the three-year statute of limitations. The State pled that it can be extended because the victim reported the offense to law enforcement within two years, and the DNA profile of the defendant was obtained and entered into a DNA database within ten years. The State also argued that this statute was amended so there is no statute of limitations on a sex case if the State can prove these two factors. The State argued that it can prove that the victim reported this offense to law enforcement authorities to the same day that it occurred, April 26, 2008, and defendant's DNA was entered into the database in September of 2009, which was less than ten years. The trial court denied defendant's motion to dismiss, finding "The statute cited by the State, as far as the statute of limitations applies in this case, and therefore, your motion to dismiss will be denied."

¶ 8      Defendant waived his right to a jury trial and proceeded to trial in a bench trial. The State amended count one of the indictment to criminal sexual assault and *nolle prosequi* count two.

¶ 9      T.R. testified that in April of 2008, she was 14 years old and living in an apartment in the Englewood neighborhood with her mother and three younger siblings. Her younger sisters were seven years old and three years old, and her younger brother was 11 years old.

¶ 10     On April 26, 2008, she was home with her younger siblings. Her mother was not at home. At 2:00 a.m., she was in the living room inside the apartment and watching television. She was dozing off after she had just gotten off the phone with her mother. Her three siblings were asleep in the rear bedroom. She heard banging at the front door of the apartment. She jumped up and opened the door without asking who was there. When she opened the door, she saw defendant, who she described as her mother's "close friend, her best friend's brother." She saw him "[e]very day…" Defendant "busted into the apartment" "breathing hard as if something was wrong." She asked

him what was wrong. He told her to "hold on" and held one finger up. He told her that he "got to piss real quick."

¶ 11     Defendant walked towards the bathroom, located across from the bedroom. T.R. went to the house phone to try to call her mother to let her know that he was using the bathroom. T.R. was not supposed to open the door to anyone while her mother was gone. Her mother did not answer the phone. T.R. hung up and sat down on the living room couch. When she did not hear water or the toilet flushing, she got up, peeked around the corner. She saw the bathroom was wide open and did not see defendant inside the bathroom.

¶ 12     She looked into the bedroom where her three younger siblings were sleeping. She saw that the gown to her seven-year-old sister was over defendant's head. Defendant was kneeling on the floor and her sister was positioned on the edge of the bed. T.R. saw him performing oral sex on her sister. T.R. started crying and asked him "what was going on….What are you doing. We are supposed to be family…" Defendant jumped up quickly and drank from a silver flask. At that point defendant told her, "It's either you or her." She thought that it meant that he demanded to have sexual intercourse with her or her sister.

¶ 13     T.R. turned around and walked back to the living room. She tried to think of a way to get out of this situation. Defendant followed her. T.R. sat down on the couch and told defendant that she did not want to have sexual intercourse with him. He told her that either she was going to do it or he was going to do "both of us. He had enough for the both of us." She told him that she would rather do it than have him touching her younger sister.

¶ 14     T.R. stood up and tried to convince him to not do this. She told him that anybody could walk in, this was not okay, and she thought of him as an uncle because he was with her mother all the time. He said, "are you ready or not." Defendant picked her up and laid her down on the couch.

He set his flask down and pulled off her underwear. He performed oral sex on her and asked if she liked it. She told him, "No." Then, defendant pulled his pants down, opened her legs and put his penis into her vagina. She told him that it hurt and that she was a virgin. He told her that she was lying and said, "…I know you like it. Tell daddy you like it." She started screaming that it hurt and repeatedly asked him to stop.

¶ 15     She screamed louder when she heard the front door to the apartment building open, and she thought it was her mother coming home. Her mother struggled to open the door to the apartment but was finally able to open it. The couch, where defendant and T.R. were located, was visible to someone coming into the apartment. Defendant jumped up, but then fell down because his pants were at his ankles. He jumped back up and ran out the back door to the apartment. She told her mother that defendant was the one who had sexually assaulted her. She apologized to her mother and told her that she was trying to save her younger sister. After her mother called T.R.'s grandmother, her grandmother came to the house. Her mother and her grandmother got into a physical fight before her grandmother took her to the hospital. T.R. testified that her mother "really didn't too much care. She cared more about her friendship."

¶ 16     During the morning hours of April 26, 2008, T.R. subsequently went to Saint Bernard Hospital where a sexual assault examination was conducted by medical staff. During cross-examination, T.R. testified that she told the doctors at the hospital that defendant banged on the front door, and she knew that defendant had just been with her mother, that she opened the door, and defendant was out of breath. Defendant told her that he needed to use the bathroom, but when he was gone too long for the bathroom, she found him performing oral sex on her seven-year-old sister. She told him that she had seen what he was doing, and he told her that it was either her or her sister.

She told him that she would rather it be her than her sister. She told the doctors that defendant put his penis into her vagina.

¶ 17    Rolyn Paguntalan, a registered nurse in the emergency room at Saint Bernard's Hospital, was present and took notes while Doctor George Dengler performed the sexual assault examination on T.R., swabbing her vagina for the presence of semen. Doctor Dengler also conducted an external examination of T.R. for bruises and other injuries. The parties stipulated that there were no signs of external injury on T.R. and that she denied "sexual interaction." Ms. Paguntalan testified that there are not always signs of external injury when someone has been sexually assaulted.

¶ 18    That same day, Chicago Police Officer Elizabeth Vera, an evidence technician, collected the sealed sexual assault kit, including the vaginal swabs. Later that day, she inventoried the kit, following all the proper Chicago police department protocols for that process. Kenan Hasenbegovic, a forensic scientist at the Illinois State Police Forensic Science Center, testified as an expert in the field of forensic biology. He tested the swab collected from T.R.'s vagina for the presence of sperm. During the testing, he was able to see semen cells. He preserved the swab for future DNA analysis. He also preserved a blood standard for T.R. for future DNA analysis.

¶ 19    Jennifer Belma, a forensic scientist at the Illinois State Police Forensic Science Center and an expert in the field of biology and DNA, conducted a forensic DNA analysis on the sperm collected from T.R.'s vaginal swab. On the non-sperm fraction from the vaginal swab, she identified a human DNA profile that matched the DNA profile of T.R. On the sperm fraction from the vaginal swab, she identified a human male DNA profile. She did not have any DNA profiles from any known male donors to compare to the male DNA profile when she conducted the testing. On August 27, 2009, she entered the DNA profile into the DNA database, and "the search resulted in a positive association to a profile that was associated with the name Gregory Johnson." She

requested a confirmatory standard for Gregory Johnson for the purpose of comparing it to the unknown profile, but she did not complete any further testing at that time.

¶ 20 On December 14, 2018, Chicago Police Detective Marina Makropoulos collected a buccal swab standard from defendant pursuant to a search warrant and preserved it for future DNA analysis. Kelsey Fontanetta, a forensic scientist at the Illinois State Police Forensic Science Center and an expert in the field of forensic DNA analysis, received the buccal swab standard collected from defendant. She conducted a confirmatory forensic analysis by comparing the DNA data previously generated by forensic scientist Jennifer Belma for the male DNA profile identified from the sperm fraction from the victim's vagina to the known DNA profile identified from defendant's standard. She determined that the DNA profile identified from the standard was suitable for comparison purposes, and that defendant's DNA was included as a possible contributor to the DNA profile obtained from the victim's vagina. The calculation estimated a statistical frequency that no fewer than one in 560 quadrillion individuals who are unrelated would be included as a possible contributor.

¶ 21 On December 19, 2018, Detective Makropoulos went to T.R.'s out-of-state home and showed her a photograph of defendant. She identified the photo as that of "Billy Bob," the person who forced his penis into her vagina on April 26, 2008.

¶ 22 On October 11, 2019, the trial court found defendant guilty of criminal sexual assault. Defendant was represented by counsel for posttrial motions and sentencing. In his second amended posttrial motion, defendant alleged, *inter alia*, that the trial court erred in denying his pre-trial motion to dismiss the indictment. The trial court denied defendant's motion. The trial court sentenced defendant to 12 years' imprisonment and three years to life mandatory supervised release.

¶ 23                                              ANALYSIS

¶ 24      Defendant argues that the trial court erred in denying his motion to dismiss the indictment on

the basis that the prosecution was brought outside the three-year general statute of limitations, and,

at trial, the State failed to prove the elements necessary to extend that statute of limitations. In turn,

the State argues that the trial court correctly found that there were sufficient facts to extend the

statute of limitations as alleged, and that the State proved these facts at trial. We find that the trial

court's decision to deny defendant's motion to dismiss the indictment was proper and reject

defendant's argument that the State was required to prove these facts at trial. We review *de novo*

a circuit court's decision regarding a violation of the statute of limitations as it involves a legal

issue. *People v. Casas*, 2017 IL 120797, ¶ 17.

¶ 25      In the relevant counts in this case, defendant was charged with two counts aggravated criminal

sexual assault that allegedly occurred on April 26, 2008. The statute of limitations applicable at

the time that he committed this offense provided that: "Unless the statute describing the offense

provides otherwise, or the period of limitation is extended by Section 3-6, a prosecution for any

offense not designated in Subsection (a) must be commenced within 3 years after the commission

of the offense if it is a felony…" 720 ILCS 5/3-5(a) (eff. Nov. 9, 2005):

          (a) A prosecution for *** (2) any offense involving sexual conduct or sexual

              penetration as defined by Section 12-12 of this Code in which the DNA profile

              of the offender is obtained and entered into a DNA database within 10 years

              after the commission of the offense and the identity of the offender is unknown

              after a diligent investigation by law enforcement authorities, may be

              commenced at any time. Clause (2) of this subsection (a) applies if either: (i)

the victim reported the offense to law enforcement authorities within 2 years after the commission of the offense…" *Id.*

¶ 26    However, after defendant committed this offense but before he was charged, Public Act 95-899 went into effect. Under this amendment, effective on January 1, 2009, the State was no longer required to show that "the identity of the offender is unknown after a diligent investigation by law enforcement authorities…" 720 ILCS 5/3-5(a)(2) (P.A. 95-899) (eff. Jan. 1, 2009) The amendment also changed the amount of time that the victim had to report the offense to law enforcement from two years to three years after the commission of the offense. *Id*.

¶ 27    It is well-established that the legislature can extend the statute of limitations for crimes that occurred before the effective date of the change (without risking the enactment of an *ex post facto* law), as long as the extended period does not apply to any case in which the defendant has the right to acquittal from the expiration of the original statute of limitations. *People v. Anderson*, 53 Ill.2d 437, 440-41 (1973); see also *People v. Puruncajas*, 2022 IL App (1st) 192515, ¶ 13. This long-standing rule is consistent with the decision in *Stogner v. California*, 539 U.S. 607, 632 (2003), where the Supreme Court declared a California statute that allowed for the prosecution of time-barred cases to be an *ex post facto* violation, but "to hold that such a law is *ex post facto* does not prevent the State from extending time limits for the prosecution of future offenses, or for prosecutions not yet time barred."

¶ 28    Here, defendant committed this offense on April 26, 2008, and under the general statute of limitations in effect at that time, the limitation period for his prosecution would have expired three years later, on April 26, 2011. 720 ILCS 5/3-5(b)(eff. Jan. 1, 2006). However, defendant was indicted on January 16, 2019. "When a period of the charged conduct falls outside the statute of limitations, the State must show that the conduct outside the statute of limitations falls under an

exception." *People v. Puruncajas*, 2022 IL App (1st) 192515, ¶ 12 (citing *People v. Toolen*, 116 Ill.App.3d 632, 652 (5th Dist. 1983)).

¶ 29 Applicable to the facts here, section 5/3-5(a)(2) was amended eight months after he committed this offense, and prior to the expiration of any term, which allowed for the prosecution for criminal sexual assault at "any time" if the victim reported the offense to law enforcement within three years, and if the offender's DNA was entered into a DNA database within ten years. Pursuant to *Anderson*, defendant was subject to this extension because his right to acquittal had not yet vested. *Anderson*, 53 Ill.2d at 437.

¶ 30 Having found that the statute of limitations had not expired when the extension became effective, we turn to defendant's argument that the indictment failed to properly set forth the basis for an extended limitations period. We disagree with defendant's argument. At the time that defendant was charged with this offense, the amended statute allowed for the prosecution of criminal sexual assault at "any time" if two requirements were shown: if the victim reported the offense to law enforcement within three years, and if the offender's DNA was entered into a DNA database within ten years. *Id*. Defendant does not dispute that the State pled, and later established at trial, these two requirements. Instead, he focuses on the fact that, in the indictment, the State relied upon the earlier version of section 5/3-5(a)(2) which also required them to show that the identity of the offender is unknown after a diligent investigation by law enforcement authorities. Defendant argues that the State failed to argue and present evidence of this additional statutory element at the hearing on the motion and did not present evidence to establish this additional statutory element at trial.

¶ 31 In *People v. Strait*, 72 Ill.2d 503 (1978), the supreme court recognized "that if the indictment or information shows on its face that the offense was not committed within the period of limitation

[then] facts must be averred which invoke one of the exceptions contained in the statute." *Strait*, 72 Ill.2d at 504-05; See *People v. Nunez*, 319 Ill.App.3d 652, 656 (1st Dist. 2001). Because there a several statutory provisions allowing for the extension or tolling of the statute of limitations (See 720 ILCS 5/3-6, 3-7 (West 2021), "it necessarily follows that the State should be required to sufficiently and specifically plead such circumstances in order to provide the defendant notice." *People v. Gray*, 396 Ill.App.3d 216, 225 (4th Dist. 2009).

¶ 32 Here, defendant challenged the sufficiency of the indictment prior to trial. Because defendant filed a pre-trial motion on this basis, "the indictment or information must strictly comply with the pleading requirements of section 111-3." *People v. Rowell*, 229 Ill.2d 82, 93 (2008); (citing 725 ILCS 5/111-3 (West 2014); *People v. Thingvold*, 145 Ill.2d 441, 449 (1991). Defendant is not required to show prejudice under these circumstances. *People v. Benitez*, 169 Ill.2d 245, 258 (1996). "Upon such a challenge, the burden shifts to the State to prove to the trial court that (1) the prosecution of the defendant is proceeding within the applicable time frame, (2) the charging instrument is, in fact, valid, and (3) the case should proceed to trial." *Gray*, 396 Ill.App.3d at 225.

¶ 33 However, "[o]ur supreme court has declined to rigidly define what is required for the State to invoke an exception to the statute of limitations." *People v. Casas*, 2018 IL App (2d) 150456-B, ¶ 12 (citing *People v. Morris*, 135 Ill.2d 540, 547 (1990)).

> "The standard for assessing the sufficiency of a charging instrument – both for the offense and for exceptions to the statute of limitations – is whether the document 'provide[s] notice to the defendant of precisely what the State will attempt to prove (and therefore to allow the defendant an opportunity to prepare a defense).' To satisfy this standard, 'the State must not only set forth circumstances which, in and of themselves, would provide a basis for tolling a limitation period, but the State

must make clear that those circumstances are in fact the basis upon which the State seeks to toll the limitation period.'" *Id.*

¶ 34     Here, the indictment provided notice to defendant as to the specific statute of limitations which the State sought to provide as a basis for the State to exceed the time limitations and also provided defendant the opportunity to prepare a defense. Moreover, we agree with the State's argument that the indictment was otherwise properly pled and the allegation regarding the identity of the offender is unknown after a diligent investigation by law enforcement authorities, constituted surplusage. "Where an indictment charges all essential elements of an offense, other matters unnecessarily added may be regarded as surplusage." *People v. Collins*, 214 Ill.2d 206, 219 (2005); See also *People v. McCarter*, 2011 IL App (1st) 092864, ¶ 87 (citing *People v. Figgers*, 23 Ill.2d 516, 519 (1962) (immaterial matters, or matters if omitted from an indictment would not render it insufficient or cause damage to material averments, may be regarded as surplusage). In other words, whenever an averment can be stricken without vitiating the indictment, such averment may be treated as surplusage and rejected. See *People v. Young*, 12 Ill.App.310, 314 (3d Dist. 1973).

¶ 35     This case falls within that category as defendant does not dispute that the other elements pled in the indictment were properly pled, and he does not challenge whether the evidence established the application of them. The statute required that the victim report the offense to law enforcement authorities within two years after the commission of the offense. Here, as the State argued at the hearing, the offense was committed on April 26, 2008, and T.R. reported the offense to law enforcement authorities that same day. Therefore, this statutory requirement was satisfied. Moreover, the statute required that the DNA profile of the offender be obtained and entered into a DNA database within 10 years after the commission of the offense. Here, while the State argued at the hearing that defendant's DNA profile was obtained and entered into the DNA database in

September of 2009, the evidence presented at trial was that this occurred on August 27, 2009. A sample containing sperm was obtained during the sexual assault examination conducted at the hospital. Jennifer Blema, a forensic analyst, conducted a DNA analysis on this sperm. She was able to identify a human male DNA. She testified that on August 27, 2009, she entered that DNA profile into the DNA database. Therefore, the evidence established that she entered the DNA profile into the DNA database less than two years after the commission of the offense.[1]

¶ 36      While defendant suggests that this well-established rule is inapplicable because the surplusage relates to the proper pleading of a statute of limitations and not the actual elements of the offense, we fail to see that there should be an exception under these circumstances. Similar to *Puruncajas*, in which the State misidentified that correct statutory version of the limitation period on the charging document, we likewise find that the inclusion of this additional element amounted to an error "of form, not substance…" *People v. Puruncajas*, 2022 IL App (1st) 192515, ¶ 20. Therefore, we reject defendant's claim that the failure to amend the indictment to remove this additional element somehow undermined the trial court's decision to deny defendant's motion to dismiss the indictment.

¶ 37      Defendant also argues that the State failed to present evidence at trial to show that the identity of the offender was unknown after a diligent investigation by law enforcement authorities. Defendant relies upon *People v. Morris*, 135 Ill.2d 540, 546 (1990), in which our supreme court

---

[1] Jennifer Belma testified that when she entered the DNA profile into the DNA database, "the search resulted in a positive association to a profile that was associated with the name Gregory Johnson." Subsequently, after defendant's buccal swab standard was obtained, Kelsey Fontanetta compared it to the DNA profile obtained by Jennifer Belma from the vaginal swabs collected from T.R. She determined that the DNA profile from the vaginal swabs matched defendant's DNA with a statistical frequency of no fewer than one in 560 quadrillion unrelated individuals. While there was no evidence showing a direct connection between the DNA of "Gregory Johnson" and defendant, defendant did not argue at trial, or now on appeal, that the DNA evidence established that someone else committed the offense.

held, "Where an indictment on its face shows that an offense was not committed within the applicable limitation period, it becomes an element of the case to allege and prove the existence of facts which invoke an exception to the limitation period." *Morris* was followed in *People v. Lutter*, 2015 IL App (2d) 140139, ¶ 11.

¶ 38   However, after *Lutter*, and effective January 1, 2018, Public Act 100-434 added new language to sections 3-6 and 3-7 of the Code. Pub. Act 100-4343 (eff. Jan. 1, 2018). Under this new framework, the State "shall not be required to prove at trial facts which extend the general limitations in section 3-5 of the Code when the facts supporting extension of the period of general limitations are properly pled in the charging document. Any challenge relating to the extension of the general limitations period as defined in this Section shall be exclusively conducted under Section 114-1 of the Code of Criminal Procedure of 1963." Pub.Act 100-434 (eff. Jan. 1, 2018) (amending 720 ILCS 5/3-6, 3-7). This statute was in effect prior to defendant being charged in this case. Thus, the State would not have been required to prove, at trial, facts which extended the general statute of limitations in this case.

¶ 39                                                        CONCLUSION

¶ 40   For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 41   Affirmed.