# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Merrick*, 2012 IL App (3d) 100551

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRUCE N. MERRICK, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-10-0551 |
| Rule 23 Order filed<br>Motion to publish allowed<br>Opinion filed | March 1, 2012<br><br>April 18, 2012<br>April 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for aggravated DUI was affirmed over his contentions that there was no proof his alcohol consumption was the proximate cause of the accident that resulted in the death of a friend, his sentence was excessive, and the trial court erred in admitting three victim impact statements, since defendant conceded he was driving at the time of the accident and that his blood alcohol content was above the legal limit, the sentence was within the statutory range, he had a prior Class 1 felony, and the trial properly considered the aggravating and mitigating factors, including the hardship to his family. |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 05-CF-595; the Hon. Susan Sumner-Tungate, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michelle A. Zalisko, of State Appellate Defender's Office, of Mt. Vernon, for appellant. |
| | |
| | John J. Boyd, State's Attorney, of Kankakee (Terry A. Mertel and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion. Justices Lytton and Wright concurred in the judgment and opinion. |

# OPINION

¶ 1     After a jury trial, the defendant, Bruce N. Merrick, was convicted of two counts of aggravated driving while under the influence of alcohol (DUI). 625 ILCS 5/11-501(a)(1), (a)(2), (d)(1)(F) (West 2004). The two counts merged, and the defendant was sentenced to 8 years in the Department of Corrections (DOC), with the final 11 months of the sentence to be served at home with electronic home monitoring. See 730 ILCS 5/5-8A-3 (West 2004). On appeal, the defendant argues that: (1) the State failed to prove the defendant guilty beyond a reasonable doubt because there was no proof that the defendant's alcohol consumption was the proximate cause of the automobile accident; (2) his sentence was excessive; and (3) the trial court abused its discretion in admitting and considering three victim impact statements during sentencing. We affirm.

¶ 2                                    FACTS

¶ 3     On July 17, 2005, the defendant was in a motor vehicle collision that resulted in the death of his friend, Mark Torstrick. At trial, the State argued that the defendant was driving under the influence of alcohol and that this act resulted in Torstrick's death.

¶ 4     The State presented the testimony of William Carnahan, who worked for the Kankakee County sheriff's office. Carnahan testified that when he first arrived at the scene of the accident, he began documenting the scene and investigating the cause of the crash. He checked the scene for skid marks, fluid, debris, gravel, sand, or other substances that could have possibly caused the crash. He did not see any foreign matter on the roadway. Carnahan also inspected the inside of the vehicle at approximately 3 a.m. and detected the smell of alcohol.

¶ 5     Kimberly White testified that she worked as a nurse at St. Mary's Hospital on July 17, 2005. She stated that when the defendant arrived at the hospital, he was classified as a "level one trauma" and qualified to have blood and drug testing done to make sure he had a "good

level of consciousness." She testified that blood was drawn from the defendant at 1:55 a.m., and the lab received it at 2:03 a.m. The defendant's blood alcohol content (BAC) was 0.212. White also testified that the defendant was not tested for gamma-hydroxybutyric acid (GHB).

¶ 6        Coroner Bob Gessner testified from an autopsy report prepared by a medical examiner who had died the previous week. Gessner described the multiple injuries to Torstrick as a result of the accident and stated that the immediate cause of death was blunt neck and chest trauma.

¶ 7        The defendant testified that he had been in the military for 21 years and that Torstrick had been in the Marines. On July 16, 2005, he picked Torstrick up at approximately 1 p.m., and on the way to the defendant's house, they stopped to buy some groceries, including some beer. Later on that afternoon, the defendant stated that he began cooking ribs, he drank "two-thirds of five beers" while cooking and put some beer on the ribs.

¶ 8        After Torstrick and the defendant's son had an argument, Torstrick left the defendant's house, and the defendant went to give Torstrick a ride home. When he found Torstrick, they decided to go to a strip club. Once at the strip club, the defendant drank two more beers. He and Torstrick also entered into an altercation with some men because the defendant commented that one of the strippers was "ugly." The defendant took Torstrick into the bathroom to calm him down. When they returned, the defendant testified that he switched to drinking soda in case he needed to "pound somebody." The defendant stated that the last memory he had was right after leaving the strip club and that, as far as he knew, he was the driver that night. He had no memory of the accident.

¶ 9        The defendant's expert, Paul Bederka, testified that it was very unlikely the defendant had passed out from alcohol while driving home. The basis of his opinion was that the defendant was a "practiced drinker" who had built a tolerance to alcohol and was more functional with higher blood alcohol levels than other drinkers. Bederka believed that something else, or something in combination with alcohol, caused the defendant to pass out, and he suggested the drug GHB. While Bederka concluded that alcohol was not the major contributing factor of the accident, he admitted that it could have been a contributing factor.

¶ 10       In rebuttal, the State produced Illinois State Police forensic scientist John Wetstein. Wetstein testified that a 285-pound man would have to consume between 16 and 17 drinks in order to have a BAC level of 0.212.

¶ 11       The jury found the defendant guilty, and a sentencing hearing was held on April 29, 2010. At the hearing, Torstrick's two sisters and his daughter read victim impact statements to the court. The defendant also had a prior criminal record, including a 2002 conviction for delivering cocaine, and a prior DUI from 2005.

¶ 12       The defendant's wife of 20 years, Yongae Merrick, testified regarding the defendant's care since the accident. She stated that every day she has to dress him and apply medication to his legs. She stated that the defendant has a hard time getting out of bed and that he goes to therapy five days a week at a place approximately 30 minutes from home. The defendant had also broken his leg since the accident and nearly had to have his leg amputated. He also had to take medications three times a day.

¶ 13       Yongae testified that if the defendant was incarcerated, the family would lose some of

the defendant's benefits and she would be forced to take the children to her native country of South Korea in order to stay with her sister. She also faced a deportation hearing on May 6, 2010, as a result of pleading guilty to a drug conviction from many years prior.

¶ 14	The defendant, who was 50 years old at the time of sentencing, also testified. He stated that for a time after the accident he was paralyzed, but through surgery he was able to recover partial use of his legs. He had an artificial hip, and his leg was broken that previous year because the brace he had been using was unable to support his weight. He also had to have someone raise his legs to prevent them from swelling because blood clots cause fluid to stay in his legs.

¶ 15	The defendant further testified that he received treatment for post-traumatic stress disorder from his 21 years of service in the military. In addition, he had several doctors' appointments scheduled, including a test to determine the severity of his ulnar nerve damage and a gastrointestinal consult.

¶ 16	The defendant admitted that he had unresolved anger issues resulting from the death of his 17-year-old daughter. He admitted that, after her death, he drank "a lot," but stated that he can no longer drink because of the potential interaction of the alcohol with his medications.

¶ 17	During cross-examination, the defendant acknowledged that in 2008 he punched an individual for parking in a handicapped spot without a handicap placard. He also admitted to an altercation with a police officer at the Veteran's Administration (VA) facility where he was receiving treatment.

¶ 18	In imposing sentence, the trial court said that it had considered five or six presentence reports dating back from the defendant's conviction. The court stated that, "as I've read through all this, it's as if I were reading about two different people" and referred to the defendant as "[v]ery bright" and considered his great commendations from his time spent in the military. On the other hand, the court had to consider the loss of Torstrick. The court stated "I never knew [Torstrick], but I feel like I know a lot about him just from what his sisters and family had to say."

¶ 19	In evaluating whether there was a likelihood of the crime being repeated, the trial court found that the defendant's current condition did not necessarily prevent him from being able to drink and drive, and the court specifically referred to an incident where a handicapped person had managed to drive into a tree while under the influence of alcohol. The court further reflected that "anger management certainly is something that this defendant needs."

¶ 20	The trial court also considered the defendant's family at sentencing and acknowledged that the sentence impacted not only Yongae, but the defendant's children. However, the court found "I can do very little to help [Yongae] because she has problems in addition to what are created here."

¶ 21	Ultimately, the court sentenced the defendant to 8 years in the DOC with the last 11 months to be served at home. The defendant filed a motion to reconsider sentence on May 25, 2010. The motion argued that the sentence was excessive and that the court failed to consider factors in mitigation.

¶ 22	The trial court denied the motion to reconsider sentence. In considering the defendant's

-4-

medical condition, the court stated "nothing has been presented to this Court that indicates that the department of correction[s] cannot provide adequate treatment and care for this particular individual." While the defense attorney "seem[ed] to imply that the VA [was] the only place that [the defendant could] receive the kind of medical treatment" he needed, the court found that there was no evidence for such a conclusion. The court concluded that, when considering the defendant's past criminal history, eight years was not excessive. The defendant appealed.

¶ 23                                    ANALYSIS

¶ 24                          I. Sufficiency of the Evidence

¶ 25      The defendant's first argument on appeal is that the State failed to prove him guilty of aggravated DUI because there was insufficient proof that his alcohol consumption was the proximate cause of the motor vehicle accident. In making this argument, the defendant concedes that he was driving the vehicle and that his BAC was above 0.08.

¶ 26      When a defendant challenges the sufficiency of the evidence supporting his conviction, a reviewing court must determine whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 214 Ill. 2d 206 (2005). In this case, the State had to prove beyond a reasonable doubt that the defendant was (1) in actual physical control of a vehicle, (2) with a BAC of 0.08 or more in violation of section 11-501(a)(1), and (3) the violation of section 11-501(a) was proximate cause of another person's death. 625 ILCS 5/11-501(d)(1)(F) (West 2004); *People v. Martin*, 2011 IL 109102.

¶ 27      The defendant's argument is premised upon Bederka's testimony that something other than alcohol must have caused the accident because the defendant was a practiced drinker who had a high tolerance for alcohol. However, our supreme court recently held in *Martin* that, in order to obtain a conviction for aggravated DUI, the State was not required to prove that actual impairment was the proximate cause of the victim's death. *Martin*, 2011 IL 109102. In *Martin*, the defendant was found with trace amounts of methamphetamine in his system after causing a motor vehicle accident that resulted in the death of two people. *Id.* Similar to the instant case, the defendant argued that there was no evidence of a causal link between the trace amount of methamphetamine and the car accident. *Id.* The court disagreed and found that under the DUI statute, proof of impairment was not necessary in two types of DUI cases: (1) when the defendant's BAC was 0.08 or more; or (2) when there was any amount of cannabis, controlled substances, or methamphetamine in the defendant's body. *Id.* ¶ 26. The court reasoned that these cases were " 'strict liability' " violations as opposed to violations that required "proof of impairment." *Id.* Therefore, when an aggravated DUI charge is based on a violation of section 11-501(a)(1), as it was in this case, "section 11-501(d)(1)(F) requires a causal link only between the physical act of driving and another person's death." *Id.* In other words, because the defendant had a BAC of 0.08 or higher, the State only needed to prove that the defendant's driving caused Torstrick's death.

¶ 28      In this case, the defendant concedes that his driving caused the accident. Moreover, the evidence at trial, when viewed in the light most favorable to the prosecution, showed that

Torstrick died as a result of the accident in that the immediate cause of death was blunt neck and chest trauma. Therefore, we find that the State proved beyond a reasonable doubt that the defendant was guilty of aggravated DUI.

¶ 29                                    II. Excessive Sentence

¶ 30    The defendant's next argument on appeal is that the trial court abused its discretion by imposing an eight-year term of imprisonment. He specifically contends that the trial court did not adequately consider his potential for rehabilitation, the impact that incarceration would have on his health, and the hardship to his dependents. We disagree.

¶ 31    The trial court's sentencing decision is entitled to great deference because the court is in a better position than the reviewing court to determine appropriate sentences (*People v. Stacey*, 193 Ill. 2d 203 (2000)) and to balance the need to protect society with the rehabilitation of the defendant (*People v. Spencer*, 303 Ill. App. 3d 861 (1999)). The sentencing court has the opportunity to weigh the defendant's credibility, his demeanor and general character, and his mentality, social environment, habits, and age. *People v. Streit*, 142 Ill. 2d 13 (1991). Consequently, the trial court's sentencing determination will not be reversed absent an abuse of discretion. *Id.* A sentence that falls within the statutory range is not an abuse of discretion unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Stacey*, 193 Ill. 2d 203.

¶ 32    In the instant case, the defendant was convicted of a Class 2 felony offense of aggravated DUI, punishable by a sentence of not less than 3 years nor more than 14 years. 625 ILCS 5/11-501(d)(2) (West 2004). Additionally, the defendant had a prior Class 1 felony and was therefore ineligible for probation. 730 ILCS 5/5-5-3(c)(2)(F) (West 2004). The court in this case imposed a sentence of eight years' imprisonment, which was well within the statutory range.

¶ 33    Contrary to the defendant's assertion, the record reflects that the trial court adequately considered each of the mitigating points raised by the defendant in this appeal. Regarding the defendant's potential for rehabilitation, although the court found the defendant to be "[v]ery bright," it expressed concern about the defendant's anger management issues and found that he needed treatment. This conclusion was supported by the defendant's acknowledgment that he had punched an individual for parking in a handicapped spot and had an altercation with an officer at the VA facility. While the defendant argued below that he was unable to commit a similar offense due to his medical condition and use of prescription drugs, the court ruled that, while it was improbable that the defendant would be in a similar situation, it was not impossible.

¶ 34    The court also referred to the five or six presentence reports that had been prepared in advance of sentencing and stated that it had read all of them. The court was familiar with the defendant's medical condition, but found no evidence that the defendant could not receive adequate treatment in the DOC. Moreover, the court acceded to the defendant's request to place him on electronic monitoring for the last 11 months of his sentence, having considered his age and medical history.

¶ 35    Finally, the court specifically considered the hardship to the defendant's family, but noted

that there was not much it could do because Yongae's deportation proceedings were outside the purview of the court. Although the court did not specifically mention the reduction to the family's income once the defendant was incarcerated, the defendant had presented evidence of financial hardship to his dependents during sentencing and the court stated it had considered all mitigating evidence. *People v. Flores*, 404 Ill. App. 3d 155 (2010) (holding that there is a presumption that the sentencing court considered mitigating evidence before it, and that presumption will not be overcome without explicit evidence from the record that the trial judge did not consider mitigating factors).

¶ 36   Overall, our review of the record reveals that the trial court properly considered the aggravating and mitigating factors when it fashioned the defendant's sentence. With respect to the defendant's specific arguments, we find the sentence in this case is not manifestly disproportionate to the nature of the offense. Thus, we do not believe that the court's imposition of an eight-year term of imprisonment, which was in the middle of the possible sentencing range, indicates an abuse of discretion.

¶ 37                              III. Victim Impact Statements

¶ 38   The defendant's final argument on appeal is that the trial court abused its discretion in admitting and considering victim impact statements from Torstrick's sisters and daughter. The defendant acknowledges that the sentencing court is required by statute to allow one victim impact statement by the victim or family, and may, in its discretion, allow others. 725 ILCS 120/6(a) (West 2004). However, the defendant argues that admitting three statements amounted to a due process violation because the statements overly emphasized the victim's good conduct and loss to his family. See *People v. Richardson*, 196 Ill. 2d 225 (2001).

¶ 39   The record reflects that no due process violation occurred and that the defendant received a fair sentencing hearing. The trial court referred to the victim impact statements in one paragraph of an otherwise lengthy oral sentencing order. Moreover, the defendant put forth substantial evidence that the trial court carefully considered. Accordingly, we believe that the defendant was not deprived of due process at his sentencing hearing.

¶ 40                                      CONCLUSION

¶ 41   For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed.

¶ 42   Affirmed.