# Illinois Official Reports

## Appellate Court

---

### *People v. Swift*, **2016 IL App (3d) 140604**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOREN SWIFT, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0604 |
| Filed<br>Rehearing denied | October 19, 2016<br>November 28, 2016 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 12-CF-608; the Hon. Cynthia M. Raccuglia, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Ann Fick, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Brian Towne, State's Attorney, of Ottawa (Jasmine Morton, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion.<br>Justices Holdridge and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Loren Swift, appeals from his conviction for aggravated driving under the influence (DUI). He argues first that the trial court should have dismissed the case where the indictment was deficient. Further, defendant contends that the State failed to prove the element of proximate cause beyond a reasonable doubt. We affirm.

¶ 2                                                      FACTS

¶ 3    On January 2, 2013, the State charged defendant with two counts of aggravated DUI (625 ILCS 5/11-501(a)(6), (d)(1)(C) (West 2012)). The State would later drop one of those charges. The indictment on the remaining count read as follows:

> "On or about, August 17, 2012, in LaSalle County, Illinois, *** defendant[ ] committed the offense of: aggravated driving under the influence of alcohol (Class 4 felony)
>
> In that the said defendant drove a Chevy Trailblazer north on County Highway 15 at a time when there was any amount of drug, substance or compound in the defendant's blood, breath, or urine resulting from the unlawful use or consumption of cannabis, and in committing the violation the defendant was involved in a motor vehicle accident that resulted in great bodily harm to Robert Miller."

¶ 4    The trial court arraigned defendant on February 1, 2013. On that date, the State tendered the then two-count indictment to the defense. Defense counsel stated: "We'll acknowledge receipt of the two count indictment, waive reading of that and recitation of penalties and enter a plea of not guilty and demand trial by jury, please."

¶ 5    Over the ensuing months, defendant filed a number of pretrial motions. In one of those motions, defendant moved to dismiss the charges against him on the grounds that the statute under which he was charged had been amended to carve out an exception for the lawful medical use of cannabis. Defendant argued that his equal protection and due process rights would be violated if the new standard did not apply to him. At a hearing on the matter, defense counsel declared that he had "read the whole act five times." The trial court denied the motion.

¶ 6    Defendant's jury trial commenced on March 10, 2014. The State's first witness was Dr. Richard Anderson, a trauma surgeon at St. Francis Hospital in Peoria. Anderson testified that defendant was brought to the hospital on August 17, 2012, and a urinalysis was conducted as a standard part of trauma procedures. He testified that the urinalysis toxicology showed the presence of cannabinoids in defendant's system. He explained that cannabinoids are derivatives of marijuana and that their presence in a urine sample is indicative of prior marijuana use.

¶ 7    After Anderson was dismissed, defense counsel moved to dismiss the indictment, arguing that it was defective on its face. Counsel argued that while the statute referenced a statutory subsection that required proximate cause, the actual indictment did not contain that element. Counsel characterized that as a fatal flaw, arguing that the case should be dismissed. The State argued that the phrase "resulted in great bodily harm," as used in the indictment, had the same meaning as proximate cause. The State also referenced a discussion the parties had held regarding jury instructions that took place the previous day in the court's chambers. Citing that discussion, the State suggested defense counsel's argument was not made in good faith.

¶ 8       The trial court denied defendant's motion and directed the State to amend the indictment. The court commented: "[I]t's just a matter of words because resulted in does, indeed, mean the cause." Accordingly, the court found that amending the indictment to include the proximate cause element was technical rather than substantive and thus did not require the State to go back to the grand jury. The court also found that amending the indictment to include the proximate cause element would cause no surprise to defendant.

¶ 9       The State's next witness was Miller, the victim in the case. Miller testified that on the date in question he was driving his pickup truck with a trailer attached. After loading farm equipment onto his trailer, Miller proceeded north on County Highway 15 toward the town of Kernan. Miller described that stretch of Highway 15 as "gently rolling, [with a] roller coaster-type effect." Miller testified that Highway 15 is a two-lane road with a three-foot shoulder.

¶ 10      As Miller turned onto Highway 15, he noticed in his mirror that a piece of the equipment on his trailer had come loose. Concerned that the equipment might fall off the trailer when the truck crossed railroad tracks, Miller decided to pull over. Citing his experience as a truck driver, Miller testified that he knew the best place to pull over would be the top of a hill. He explained that the top of a hill is ideal both to increase the visibility of his truck and to "get a truck moving again" upon restarting. Miller testified that he found an appropriate spot "on top of a little rise," and that he "pulled off the road as far as I safely could." Miller explained that to the right of the three-foot shoulder was a ditch with a steep drop-off. He testified that the wheels on his truck and trailer were as close to that drop-off as possible and were then "about halfway off the pavement."

¶ 11      Upon stopping, Miller checked his driver's side mirror and saw the running lights of a vehicle cresting a hill behind him. He activated his emergency flashers and checked his mirror once again. This time, Miller saw nothing behind him. He alighted from his truck and walked back to the trailer. He grabbed the loose piece of iron, then noticed that another piece of iron had come loose as well. Miller took the first piece of iron to the bed of his truck and turned back toward the trailer to retrieve the second loose piece. As he returned to the trailer, he noticed a vehicle traveling toward him. Miller testified: "I noticed a vehicle coming from the south at a rate of speed that I thought was faster than should have been traveling knowing that *** I was there. Knowing that I was *** partially obstructing the road." Miller testified that the vehicle he saw was a TrailBlazer.

¶ 12      Miller saw the TrailBlazer hit his trailer. He testified that he did not hear the squealing of tires indicative of braking before the impact. Miller recalled spinning, as well as seeing a vehicle in the air. His next recollection was of lying in the middle of the road. His shoulder was on the center line with his head facing south. Miller testified that he was just under the TrailBlazer's driver's door. Miller spoke to the driver of the TrailBlazer as they waited for help to arrive. Miller identified defendant as the driver.

¶ 13      Miller was taken by ambulance to a hospital in Streator, then later via helicopter to St. Francis Hospital in Peoria. Miller testified that he sustained a number of injuries, including a broken femur, a broken disc in his lumbar spine, and three breaks in his pelvis. His injuries required eight or nine surgeries, including, in Miller's words, "five serious surgeries."

¶ 14      On cross-examination, Miller testified that he was aware of a large parking lot off Highway 15, approximately 25 to 50 yards north of where the accident took place. That parking lot was adjacent to Harv's Auto Body Repair. He explained that he chose not to pull in there because

backing out onto Highway 15 with his trailer would have been difficult and unsafe. It was for this same reason that Miller chose not to pull off onto a smaller street.

¶ 15    Lawrence Majerus of the La Salle County sheriff's office testified that he responded to the scene of the accident. Majerus briefly spoke to defendant on the scene and again later at the hospital. Defendant told Majerus that he had been glancing at a cornfield, and when he brought his eyes back to the road he saw the truck and trailer, and was unable to stop or swerve. Majerus described the relevant stretch of Highway 15 as follows: "There are dips in the road but they're not to the point where you come up over a rise and you're on top of somebody." Majerus confirmed that the accident occurred at the top of one of those rises. Majerus agreed that there were multiple places further down the road that Miller could have pulled into, including the parking lot by Harv's Auto Body Repair.

¶ 16    David Guinnee, also of the La Salle County sheriff's office, testified that he spoke to defendant on October 19, 2012, approximately two months after the accident. Defendant told Guinnee that on the morning of the accident he had purchased two sandwiches and placed them on the front passenger's seat of his vehicle. Defendant told Guinnee that at one point the sandwiches fell off the seat onto the floorboard. Defendant bent down to retrieve the sandwiches, at which point the accident occurred. Defendant also told Guinnee that he had smoked marijuana approximately one month prior to the accident.

¶ 17    The defense's first witness was Paul Surrock, who lived in Kernan and had come upon the accident after it occurred. He testified that a vehicle could safely pull off Highway 15 at Harv's Auto Body Repair, which was 200 to 300 yards from where the accident occurred. Further, Surrock testified that approximately 50 yards beyond Harv's, traveling north, was a large gravel parking lot big enough that one could "turn a train around" in it. Surrock described the shoulder at the scene of the accident as being 16 inches of gravel, 4 inches of grass, and then a significant drop-off. Surrock testified that he noticed marks indicating that the trailer's tires had been "right at the edge of the grass," just before the immediate drop-off. Surrock testified that he observed scratch marks in the roadway indicating that "part of the trailer hit was right almost in the center of the road. Like one foot off the center of the road of the yellow lines."

¶ 18    Defendant testified on his own behalf. He testified that as he drove up a rise on Highway 15 on the day of the accident, he could not see Miller's vehicle. At one point, defendant reached down to pick up sandwiches that had fallen off of the passenger's seat. Defendant described what happened next: "Bam. I did not—I didn't even have time to put my brakes on. I didn't have time to step on my brakes." Defendant admitted that he had smoked marijuana a month prior to the accident and had taken a marijuana capsule for pain relief two weeks prior to the accident.

¶ 19    On cross-examination, defendant testified that he had been driving within the speed limit and had not slowed down as he approached the crest of the rise. He admitted that he "glanced" over a cornfield at some point to observe a parked train. He agreed that he had not mentioned the sandwiches until speaking to Guinnee over two months after the accident.

¶ 20    Following closing arguments, the trial court delivered instructions to the jury. In doing so, the court listed five propositions that the State was obligated to prove beyond a reasonable doubt to sustain a conviction for aggravated DUI. The court read the fifth proposition as follows: "That the defendant's act of driving a vehicle while there was any amount of a drug, substance or compound in his blood or urine resulting from the unlawful use or consumption of cannabis was the proximate cause of the great bodily harm." The court continued:

- 4 -

"The term 'proximate cause' means any cause which in the natural or probable sequence produced the great bodily harm. It need not be the only cause nor the last or nearest cause. It is sufficient if it occurs with some other cause, which in combination with it causes the great bodily harm."

¶ 21    The jury found defendant guilty of aggravated DUI. Following a sentencing hearing held on June 13, 2014, the trial court sentenced defendant to a term of two years' imprisonment.

¶ 22                                              ANALYSIS

¶ 23    On appeal, defendant argues first that his conviction should be reversed because the State's indictment was deficient. Alternatively, defendant argues that the State failed to prove him guilty beyond a reasonable doubt.

¶ 24                                          I. Indictment

¶ 25    Defendant argues that the indictment failed to strictly comply with the charging requirements set forth in section 111-3(a) of the Code of Criminal Procedure of 1963 (Code). See 725 ILCS 5/111-3 (West 2012). Specifically, defendant points out that the indictment failed to allege that his conduct was the proximate cause of Miller's injuries and that proximate cause is a necessary element of the offense. Because the State's omission was substantive rather than formal, defendant maintains that the proper remedy is reversal of his conviction and dismissal of the charges.

¶ 26    Section 111-3(a) of the Code provides a list of five items that the State must include in any criminal charging instrument. 725 ILCS 5/111-3(a) (West 2012). This includes the requirement that the instrument "[set] forth the nature and elements of the offense charged." 725 ILCS 5/111-3(a)(3) (West 2012). Section 111-5 of the Code, however, provides that the charging instrument should not be dismissed based on formal defects—that is, minor, technical defects, as opposed to substantive defects. See 725 ILCS 5/111-5(a-f) (West 2012). That section further sets out a list of formal defects which will not form the basis of a dismissal:

"(a) Any miswriting, misspelling or grammatical error;

(b) Any misjoinder of the parties defendant;

(c) Any misjoinder of the offense charged;

(d) The presence of any unnecessary allegation;

(e) The failure to negative any exception, any excuse or proviso contained in the statute defining the offense; or

(f) The use of alternative or disjunctive allegations as to the acts, means, intents or results charged." *Id.*

Section 111-5 provides that a charging instrument that contains such a defect should be remedied via amendment, on motion of the State or defendant. *Id.*

¶ 27    Defendant argues that the State's failure to include the element of proximate cause in the indictment constitutes a substantive defect. Defendant also maintains that absent strict compliance with section 111-3(a), an indictment must be dismissed. Our analysis requires three distinct inquiries: (1) was the indictment in the present case defective; (2) was any defect formal or substantive in nature; and (3) is defendant required to show prejudice flowing from the deficiency, and if so, has he shown such prejudice.

¶ 28                                            A. Defect

¶ 29         Section 11-501 of the Illinois Vehicle Code is entitled "Driving while under the influence of alcohol, other drug or drugs, intoxicating compound or compounds or any combination thereof." 625 ILCS 5/11-501 (West 2012) (DUI statute). Subsection (a) of the DUI statute sets forth the scenarios in which misdemeanor DUI may be committed. 625 ILCS 5/11-501(a) (West 2012). In turn, subsection (d)(1) provides a list of circumstances in which misdemeanor DUI may be elevated to felony aggravated DUI. 625 ILCS 5/11-501(d)(1) (West 2012). Subsection (d)(1)(C), the subsection under which defendant was charged, provides that a person commits aggravated DUI where "the person in committing a violation of subsection (a) was involved in a motor vehicle accident that resulted in great bodily harm or permanent disability or disfigurement to another, when the violation was a proximate cause of the injuries." 625 ILCS 5/11-501(d)(1)(C) (West 2012).

¶ 30         Proximate cause is plainly an element of aggravated DUI as charged under subsection (d)(1)(C). Here, the court's instruction to the jury stated that proximate cause was one of the propositions the State was obligated to prove in order to sustain a conviction. The State was required to include that element in the charging instrument. 725 ILCS 5/111-3(a)(3) (West 2012). Since proximate cause was not explicitly stated in the indictment, the indictment was defective in that it failed to strictly comply with the Code.


¶ 31                                   B. Formal or Substantive Defect

¶ 32         A defect in a charging instrument is formal in nature where that defect "is not material or does not alter the nature and elements of the offense charged." *People v. Flores*, 250 Ill. App. 3d 399, 401 (1993). A defect is considered substantive where it materially alters the charge in such a way that it cannot be determined whether the grand jury intended such an alteration. *People v. Milton*, 309 Ill. App. 3d 863, 866 (1999). In other words, "once an indictment has been returned by the grand jury, it may not be broadened through amendment except by the grand jury itself." *People v. Benitez*, 169 Ill. 2d 245, 254 (1996).

¶ 33         The State's failure to include proximate cause in the indictment in the present case does not fall under any of the formal defects contemplated by section 111-5 of the Code. See *supra* ¶ 26. The failure to include an essential element of the charge would seem to be a clear substantive defect, which requires a broadening of the indictment to include that element. However, the trial court reasoned that the phrase "resulted in great bodily harm" meant the same thing as proximate cause. Under the trial court's analysis, the defect in the indictment was merely formal, because although the indictment did not contain the precise phrase "proximate cause," it nevertheless sufficiently described proximate cause. See *People v. Viar*, 131 Ill. App. 2d 983, 985 (1971) ("It is one thing to hold that there is a total omission of a necessary allegation and quite another to hold that a necessary allegation is imprecisely stated.").

¶ 34         The trial court erred in finding that "resulted in" holds the same functional meaning as "proximate cause." "Cause" and "result" are separate concepts. As written, the State's indictment only required that the end result of the motor vehicle accident was bodily harm to Miller. The DUI statute, however, requires that defendant's driving a motor vehicle caused that bodily harm. 625 ILCS 5/11-501(d)(1)(C) (West 2012). Proximate cause, as defined in the jury's instructions, means "any cause which in the natural or probable sequence produced the great bodily harm." *Supra* ¶ 20; see also *infra* ¶¶ 51-52. Indeed, Miller could have been injured in an accident with defendant, where defendant did not proximately cause those injuries. Thus,

it is not apparent from the face of the indictment whether the grand jury considered whether defendant's driving was the proximate cause of Miller's injuries. The amendment to include proximate cause in the indictment, then, was necessarily a broadening of that charging instrument. Accordingly, the defect in the indictment was substantive in nature.

¶ 35                                              C. Prejudice

¶ 36     Whether a defendant must show that he was prejudiced by a substantively defective charging instrument turns on the timing of his challenge to that instrument. It is well-settled that where a charging instrument is challenged in a pretrial motion, the charging instrument will be dismissed if it does not strictly comply with the requirements of section 111-3 of the Code. *E.g.*, *People v. Rowell*, 229 Ill. 2d 82, 93 (2008). It is equally well-settled that where an indictment is challenged for the first time on appeal, a defendant must show prejudice in the preparation of his defense. *People v. Davis*, 217 Ill. 2d 472, 479 (2005). In that context, an indictment will be deemed "sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." *People v. Gilmore*, 63 Ill. 2d 23, 29 (1976).

¶ 37     Where a defendant challenged the State's indictment during his trial is less well-settled. However, our supreme court has addressed such a situation on two occasions. In *Benitez*, 169 Ill. 2d at 246-47, the grand jury returned an indictment that named only one codefendant, and did not contain Gavino Benitez's name. The State nevertheless informed Benitez that he had been indicted. *Id.* at 247. At Benitez's arraignment, the State filed a new indictment, which named Benitez. *Id.* The State had not reconvened the grand jury, nor had it filed any motion to amend the original indictment. *Id.* Thirteen months later, on the second day of trial, defense counsel alerted the court that "it ha[d] just come to [his] attention that the indictment in this case *** does not contain the name of Gavino Benitez." (Internal quotation marks omitted.) *Id.* at 247-48. The trial court found the second indictment sufficient, and Benitez was found guilty.

¶ 38     The supreme court reversed, relying heavily on the fact that the State had failed to utilize either prescribed method for altering an indictment, *i.e.*, returning to the grand jury or filing a motion for amendment. *Id.* at 255. The court explained:

> "[T]he State arrogated for itself the power to amend the indictment as it saw fit. Secretaries in the State's Attorney's office prepared the second indictment to replace the first indictment. The second indictment added two new defendants and changed the name of a victim. We cannot sanction such a practice. Assistant State's Attorneys and their staff do not have the authority to amend grand jury indictments at will. Accordingly, we find that the second indictment was not valid as to the present defendant. Because the initial indictment failed to name defendant and the second indictment was not valid, defendant was never properly charged with any offense." *Id.*

¶ 39     Further, the court rejected the State's argument that the conviction should nevertheless stand because Benitez could not show that he suffered any prejudice as a result of being arraigned under the second indictment. *Id.* at 257. The court stated: "We hold that, under the unique circumstances of this case, defendant is not required to show that he sustained prejudice to warrant reversal of his convictions." *Id.* at 259.

¶ 40     Our supreme court considered a challenge to a charging instrument nine years later in *People v. Cuadrado*, 214 Ill. 2d 79 (2005). In *Cuadrado*, the court held that its prior decision in

*Benitez* had been based primarily on the prosecution's malfeasance in substituting one indictment for another. *Id.* at 87. Thus, the court held that, as a general rule, a defendant challenging a charging instrument during trial must show prejudice and that the misconduct in *Benitez* represented an exception to that rule. *Id.*

> "Our holding in *Benitez* clearly relied in large part upon the prosecution's misconduct. Due to that misconduct, the defendant was denied an opportunity to object to the deficiencies in the indictment before trial because he was only apprised of the State's improprieties after the trial had begun.

> In marked contrast, defendant in this case had ample opportunity before trial to object to the indictment. The indictment properly cited the charged offense [citation]. Its only deficiency was the substitution of the word "solicited" for the word "procured" used in the statutory section defining solicitation of murder for hire [citation]. We disagree with the State that the substitution is irrelevant and that the two terms are interchangeable. We do agree with the State, however, that defendant was not prejudiced by the substitution. Prior to filing her motion to dismiss the indictment, defendant filed and argued a motion for a directed finding, alleging the State's case in chief failed to prove that she "procured" Jimenez to murder her husband. This motion establishes that defendant was aware of the State's need to prove procurement. We cannot say the error in the indictment inhibited defendant in the preparation of her defense. Accordingly, we cannot conclude that defendant suffered any prejudice." *Id.* at 87-88.

¶ 41 We recognize that defendant here challenged the indictment after only one witness testified, whereas the defendant in *Cuadrado* did so after the State had completed its case-in-chief and after making a motion for directed finding. However, given the "general requirement of prejudice when an indictment is challenged after the commencement of trial" (*id.* at 87), we find this to be a distinction without a difference. Indeed, the State only amended the indictment after the trial court ordered it to do so. The defendant is obligated to show that he was prejudiced by the defective indictment in order to obtain relief in the form of dismissal.

¶ 42 Defendant, however, has put the full force of his argument on appeal behind the legal theory that he is not obligated to show prejudice in the preparation of his defense. He makes no alternative argument that he actually did suffer prejudice. In any event, the record would contradict any such argument.

¶ 43 The record shows that defendant was aware of the proximate cause element, despite the State's failure to include it in the charging instrument and suffered no prejudice in the preparation of his defense. The trial court properly denied defendant's motion to dismiss the indictment.

¶ 44                              II. Sufficiency of the Evidence

¶ 45 Defendant next contends that the State failed to introduce evidence sufficient to prove him guilty beyond a reasonable doubt. In this context, defendant once again takes issue with the proximate cause requirement. Specifically, defendant maintains that the State failed to prove that his conduct was the proximate cause of Miller's injuries where evidence showed that Miller's own actions were an intervening cause of those injuries.

¶ 46    When a challenge is made to the sufficiency of the evidence at trial, we review to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31; *People v. Collins*, 106 Ill. 2d 237, 261 (1985). In making this determination, we review the evidence in the light most favorable to the prosecution. *Baskerville*, 2012 IL 111056, ¶ 31. All reasonable inferences from the record in favor of the prosecution will be allowed. *People v. Bush*, 214 Ill. 2d 318, 327 (2005).

¶ 47    It is not the purpose of a reviewing court to retry a defendant. *People v. Milka*, 211 Ill. 2d 150, 178 (2004). Great deference is given to the trier of fact. See, *e.g.*, *People v. Saxon*, 374 Ill. App. 3d 409, 416-17 (2007). "The weight to be given to witnesses' testimony, the witnesses' credibility, and the reasonable inferences to be drawn from the evidence, are all the responsibility of the fact finder." *Milka*, 211 Ill. 2d at 178. The trier of fact is not required to accept or otherwise seek out any explanations of the evidence that are consistent with a defendant's innocence; nor is the trier of fact required to disregard any inferences that do flow from the evidence. *People v. Campbell*, 146 Ill. 2d 363, 380 (1992).

¶ 48    "[A]ggravated DUI is simply misdemeanor DUI with an aggravating factor, which turns the offense into a felony." *People v. Martin*, 2011 IL 109102, ¶ 24. In order to prove the underlying misdemeanor DUI in the present case, the State needed only to show that defendant was in actual physical control of a vehicle while "there [was] any amount of a drug, substance, or compound in [defendant's] breath, blood, or urine resulting from the unlawful use or consumption of cannabis" or other controlled substances. 625 ILCS 5/11-501(a)(6) (West 2012).[1] Defendant concedes that the State proved that he committed this misdemeanor.

¶ 49    To prove that defendant committed aggravated DUI, the State had the burden of proving beyond a reasonable doubt that defendant, "in committing a violation of subsection (a)[,] was involved in a motor vehicle accident that resulted in great bodily harm or permanent disability or disfigurement to another, when the violation was a proximate cause of the injuries." 625 ILCS 5/11-501(d)(1)(C) (West 2012). Our supreme court has clarified that the proximate cause element refers not to the presence of drugs referenced in subsection (a)(6), but only to a defendant's driving. *Martin*, 2011 IL 109102, ¶ 26. In other words, the State must prove only a causal link between defendant's driving and a person's injuries. *Id.*

¶ 50    The concept of proximate cause encompasses two separate requirements, cause in fact and legal cause. *People v. Hudson*, 222 Ill. 2d 392, 401 (2006). "Cause in fact exists where there is

---

[1]Though subsection (a)(6) appears in the statute entitled "Driving while under the influence ***," no actual "influence" or impairment is necessary to sustain a conviction under that subsection. It has thus been characterized as a strict liability violation. 625 ILCS 5/11-501(a)(6) (West 2012). *E.g.*, *People v. Merrick*, 2012 IL App (3d) 100551, ¶ 27. Perhaps reflective of changing public perceptions, our legislature has begun to phase out that strict liability for drivers found with cannabis or its derivatives in their systems. Effective in 2014, the statute now contains an exception for those lawfully consuming cannabis pursuant to Compassionate Use of Medical Cannabis Pilot Program Act (410 ILCS 130/1 *et seq.* (West 2014)). 625 ILCS 5/11-501(a)(6) (West 2014). Effective July 29, 2016, cannabis has been removed from subsection (a)(6) altogether. Pub. Act 99-697 (eff. July 29, 2016) (amending 625 ILCS 5/11-501 (West 2014)). Now, the presence of cannabis in a driver's system may only serve as the basis for a DUI conviction when it reaches a certain level in the body, similar to a DUI conviction based on alcohol. Pub. Act 99-697 (eff. July 29, 2016) (amending 625 ILCS 5/11-501.2 (West 2014)).

a reasonable certainty that a defendant's acts caused the injury or damage." *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 258 (1999).

> "Legal cause 'is essentially a question of foreseeability'; the relevant inquiry is 'whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct.' [Citation.] Foreseeability is added to the cause-in-fact requirement because 'even when cause in fact is established, it must be determined that any variation between the result intended *** and the result actually achieved is not so extraordinary that it would be unfair to hold the defendant responsible for the actual result.' " *Hudson*, 222 Ill. 2d at 401 (quoting *Galman*, 188 Ill. 2d at 258, and 1 Wayne R. LaFave, Substantive Criminal Law § 6.4, at 464 (2d ed. 2003)).

¶ 51 A defendant may escape liability by showing that an intervening event was the actual proximate cause of an accident. See *Mack v. Ford Motor Co.*, 283 Ill. App. 3d 52, 57 (1996) (citing *Davis v. Marathon Oil Co.*, 64 Ill. 2d 380, 395 (1976)). An intervening event does not break the chain of legal causation, however, where that intervening event is foreseeable. *Id.* (citing *Felty v. New Berlin Transit, Inc.*, 71 Ill. 2d 126, 131 (1978)). In fact, there may be more than one proximate cause to an injury. *E.g.*, *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7, 20 (1999). "Furthermore, the precise nature of the intervening cause need not be foreseen [citation], and where varying inferences are possible, foreseeability is a question for the jury [citation]." *Mack*, 283 Ill. App. 3d at 57.

¶ 52 A rational juror could reasonably have found that defendant's driving proximately caused Miller's injuries. Such a juror could surely conclude that it is foreseeable that a vehicle may be pulled over onto the shoulder of a road. Moreover, a rational juror could certainly find it foreseeable that when the shoulder of a road is narrow, such a stopped vehicle may partially obstruct the roadway. Finally, a rational juror could also conclude that when a driver takes his eyes off the road, whether to stare into a cornfield, or to pick up sandwiches, it is foreseeable that a traffic accident might occur.

¶ 53 Defendant maintains that Miller's conduct was an unforeseeable intervening cause of Miller's injuries, defeating the conclusion that defendant's own driving was the proximate cause of those injuries. He asserts that he "could not have foreseen that a trailer would be obstructing the only northbound lane of a road with rolling hills which already made it difficult to anticipate conditions ahead."

¶ 54 However, as discussed above, a rational jury could find that a motorist pulled over onto the narrow shoulder should have been foreseeable to defendant. While the defense did present evidence probative of the unreasonableness of Miller's actions, the jury was under no obligation to accept its evidence. When looking at the evidence in the light most favorable to the State, we find that a rational juror could have found defendant's conduct to be the proximate cause of Miller's injuries beyond a reasonable doubt.

¶ 55 CONCLUSION

¶ 56 The judgment of the circuit court of La Salle County is affirmed.

¶ 57 Affirmed.