2023 IL App (2d) 220390-U
No. 2-22-0390
Order filed June 27, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-CF-1447 |
| | ) | |
| VICTOR ORTIZ, | ) | Honorable |
| | ) | George D. Strickland, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Kennedy concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Trial counsel was not ineffective for failing to object at sentencing to improperly admitted victim impact statements, because the record did not overcome the presumption that the trial court considered only competent evidence in sentencing defendant.

¶ 2   Following a jury trial, defendant, Victor Ortiz, was convicted of two counts of aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(1), (d)(1)(F) (West 2018)). The trial court sentenced defendant to two concurrent 17-year prison terms. On appeal, defendant argues that he was denied his constitutional right to the effective assistance of counsel when

defense counsel failed to object to the admission of certain victim impact statements at defendant's sentencing hearing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On August 7, 2019, defendant was indicted on four counts of aggravated DUI. Count I alleged that, on June 8, 2019, defendant knowingly drove a vehicle while under the influence of alcohol and, while doing so, was involved in an accident that proximately caused the death of Barbara Gaulke. *Id.* §§ 11-501(a)(2), (d)(1)(F). Count II was identical to count I except that it alleged that defendant had a blood alcohol concentration (BAC) greater than 0.08. *Id.* §§ 11-501(a)(1), (d)(1)(F). Counts III and IV paralleled counts I and II but named Sandra Forscht as victim. (Defendant was also indicted on four counts of reckless homicide (720 ILCS 5/9-3(a) (West 2018)), which were later *nolle prossed*.)

¶ 5      The State's evidence at trial established generally that, at approximately 8:45 p.m. on June 8, 2019, defendant was driving his work van south on Fairfield Road, a two-lane highway in a rural area of Lake County. According to eyewitness testimony, defendant's vehicle drifted over the center line, sideswiped a minivan, and then crashed head-on into a Kia sedan. The driver of the Kia, Gaulke, and her passenger, Forscht, were killed instantly. Defendant was taken to Condell Medical Center where he underwent two blood draws. The first, taken at about 11 p.m., established a BAC of 0.231. The second, taken about 40 minutes later, established a BAC of 0.204.

¶ 6      Defendant testified that, on the day of the accident, he worked from about 1 p.m. to 3 p.m. After work, he went to his cousin's house where he remained until about 8 p.m. He left his cousin's house and was traveling south on Fairfield Road when another vehicle crossed into his lane, causing an "impact" with his vehicle. That impact caused defendant to "[c]ompletely" lose control of his vehicle and "strike" another vehicle. Defendant denied consuming any alcohol that day. He

claimed that he had diabetes and took medication for the condition. He did not have his medication with him at the time of the accident.

¶ 7     The jury found defendant guilty on all four counts. The trial court denied defendant's posttrial motion, and the matter was set for sentencing.

¶ 8     Defendant's sentencing hearing took place on November 1, 2022. The parties confirmed they had reviewed the presentence investigation report (PSI). In aggravation, the State presented testimony from Kildeer police officer Brian DeKind, who stated that, late in the evening on June 28, 2019, he arrested defendant for DUI. At that time, DeKind was unaware that defendant was under investigation in the present case. DeKind stopped defendant's vehicle after observing him speeding and "cross[ing] the center lane where half or a little more than half of the vehicle was in the opposing lane of traffic." A portable breath test conducted at the scene showed a BAC of 0.283; the test conducted at the police station about 30 to 60 minutes later showed a BAC of 0.22.

¶ 9     The State also presented testimony from Lake County sheriff's deputy Tyler Schimanski, the lead investigator in the present case. Schimanski testified that, on June 28, 2019, while the investigation into the crash was ongoing (and no charges were yet filed against defendant), he received an anonymous tip that defendant was preparing to leave the country. Schimanski directed Detective Patricia List to go to defendant's residence to investigate. List informed Schimanski that the residence "appeared to be cleared out and [defendant] was no longer there." In the meantime, Schimanski received the results of defendant's toxicology report in the present case and learned of the recent Kildeer arrest. Further investigation into defendant's whereabouts after his release from the Kildeer police station ultimately led to defendant's apprehension on a bus headed to Guatemala.

¶ 10    The State next read into the record a victim impact statement from Gaulke's sister, Diane Bartlett. When the trial court asked if the State had other aggravating evidence, the following colloquy occurred:

"MR. HOFFERT [(ASSISTANT STATE'S ATTORNEY)]: Not live evidence, Judge.

There is an addendum to the PSI that contains other statements that I know the Court has including from—several statements, but they include one from Joe Forscht, which was [Forscht's] husband.

THE COURT: All right.

Which I've read as well.

All right. [Defense counsel], any evidence in mitigation?

MR. RITCCA [(DEFENSE COUNSEL)]: Just statements that had been presented for this Defendant, [Y]our Honor.

THE COURT: Okay.

Which I have read this morning as well."

In addition to the statements from Gaulke's sister and Forscht's husband, attached to the PSI were: (1) a one-page typed statement from Forscht's friend, Dean Ray Marshall; (2) a one-page handwritten statement from Forscht's "dear friend," whose name is illegible; (3) a half-page typed statement on behalf of Forscht from Karen Martindell; (4) a short typed statement from Forscht's "special friend," Charlotte Acuff; (5) a short handwritten statement on behalf of Forscht from Sheila Jean Donnelly; and (6) a handwritten note from Forscht's longtime friend, Jody (last name illegible).

¶ 11    In allocution, defendant stated:

"DEFENDANT: I have been here for three years—maybe a little more than that.

I feel very sorry for these people and for the pain that her family has on that.

And I don't feel that I caused this but it's something that happened and at any moment, I will lie that these people die, because I do have a family also and they do feel like hurt because I'm here.

I once had a moment—that I was at a moment and wrong place in the moment.

And I have prayed a lot for the people that passed away and I feel very sorry for that, for the pain that their family has gone through.

My family suffering also.

I do have grandkids. I have kids.

My family is not here because there is a lot of them and they are far away from here.

And I only have two family members here that came here today. The other ones are working. And that's it.

And I hope that they can give me something that I have been here for three years, and even more than that, but—so I am very sorry for this."

¶ 12    The State asked the trial court to impose a 22-year prison sentence. The State argued that "[the victims] and their families have paid the price" for defendant's behavior. The State emphasized defendant's subsequent arrest in Kildeer, where he was "even drunker than he was" during the present offense. The State argued that defendant's behavior was "very close to the level of depraved indifference to human life" and that "[h]e has destroyed two women and he has destroyed two families and he is doing it again." The State also pointed out defendant's attempt

to leave the country. The State argued that defendant was a "menace" and a "threat to everybody in society when he's released."

¶ 13    Defense counsel asked for a sentence "much, much less than what the State has indicated." Counsel argued that defendant denied consuming any alcohol on the day of the incident and that "[t]here was always a question about his diabetes and his consuming alcohol." Counsel claimed that "there was [*sic*] indications that [defendant] was previously struck by an oncoming car that caused his vehicle to veer" into the oncoming lane. Counsel argued that defendant was "remorseful for what had occurred." Counsel pointed out that defendant was employed and financially supported others. Counsel further noted that defendant had "health concerns[,]" namely diabetes, and no criminal history.

¶ 14    The trial court entered judgments of conviction on counts II and IV and vacated counts I and III. In announcing its sentencing decision, the trial court began by noting that it had

"considered the arguments of counsel, the evidence in aggravation and mitigation, the testimony of the witnesses, the Victim Impact Statement, the [PSI], the Defense and State amendments and addendums to the [PSI], the trial, the Exhibits which were received during the trial, [and] the testimony of the witnesses[.]"

In recounting the facts of the case, the court stated that "[d]efendant was highly under the influence of alcohol" and that "diabetes had nothing to do with this." "Science rejects that." The court stated that it did not believe "much of anything that *** [d]efendant said" and found that scientific testing and medical evidence contradicted defendant's denial that he had anything to drink on the day of the accident. The court also rejected defendant's version of how the accident happened, noting that three witnesses, "none of them drinking," provided versions that contradicted defendant and were "100 percent consistent with each other and *** the physical evidence."

¶ 15    The trial court commented on defendant's subsequent DUI arrest, noting that "it's hard to believe that [defendant was] actually even drunker than he was during the night that he killed two people." "[T]he breathalyzer in the police station, *** had him three times the legal limit absolutely out of his mind drunk and, yes, he is an alcoholic." The court also commented that defendant was caught "clearly fleeing the jurisdiction now that he had been arrested, again, by a different police department for a DUI."

¶ 16    The trial court emphasized that "[d]efendant has never accepted responsibility for what he has done" and that "[h]e takes no accountability, responsibility or otherwise for his alcoholism, which clearly is actual causation here." The court stated: "[A] severe alcoholic who does not admit that they are an alcoholic and shows no interest in treating the alcoholism, but drives and then kills people is likely to do the same thing again." The court found that defendant was "a high risk to reoffend."

¶ 17    In mitigation, the trial court commented: "[C]onsidering all of the factors in mitigation, one that I do consider is *** [d]efendant has by my read of this, led prior to this incident, a relatively or completely law-abiding life." The court further commented that defendant "has worked in the past" and "had family life in the past."

¶ 18    In aggravation, the trial court emphasized that "the sentence is and will be necessary to deter others." The court also commented, "[I]n the many years that I have done this, I've seen few autopsies summarized where there was more damage done to a human being." The court stated: "[T]his was devastation and it was devastation without excuse."

¶ 19    The court sentenced defendant to concurrent 17-year prison terms on counts II and IV. This timely appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21 Defendant contends that the trial court erred at sentencing when it allowed the State to present, in aggravation, victim impact statements from six of Forscht's friends. Defendant further contends that trial counsel's failure to object to the admission of the statements constitutes ineffective assistance of counsel.

¶ 22 Article I, section 8.1 of the Illinois Constitution (Ill. Const. 1970, art. I, § 8.1) prescribes numerous rights for crime victims, including the right to be heard at sentencing (*id.* § 8.1(a)(5)). That right is codified and expanded in the Rights of Crime Victims and Witnesses Act (Act) (725 ILCS 120/1 *et seq.* (West 2020)). Section 6(a-1) of the Act (*id.* § 6(a-1)) provides that, where a defendant is convicted of a motor vehicle offense resulting in great bodily harm or death,

> "a representative of the deceased person shall have the right to address the court regarding the impact that the defendant's criminal conduct has had upon them. If more than one representative of an injured or deceased person is present in the courtroom at the time of sentencing, the court has discretion to permit one or more of the representatives to present an oral impact statement. *** The court shall consider any impact statement presented along with all other appropriate factors in determining the sentence of the defendant."

The Act defines a " 'Representative' " as including "the spouse, guardian, grandparent, or other immediate family or household member of an injured or deceased person." *Id.*

¶ 23 Article I, section 8.1(e) of our constitution (Ill. Const. 1970, art. I, § 8.1(e)) provides: "Nothing in this Section or any law enacted under this Section shall be construed as creating (1) a basis for vacating a conviction or (2) a ground for any relief requested by the defendant." The Act contains a similar provision. See 725 ILCS 120/9 (West 2020).

¶ 24    Defendant is correct that the admission of victim impact statements from six of Forscht's friends was improper because the friends are not "representatives" under the Act.  See *People v. Larson*, 2022 IL App (3d) 190482, ¶ 40 (holding that the trial court had no discretion under the Act to allow a nonrepresentative to provide a statement).  Thus, the only permissible victim impact statements were provided by Gaulke's sister (Diane Bartlett) and Forscht's husband (Joseph Forscht).  But, as defendant seems to concede, we cannot find reversible error based solely on the provisions of the state constitution or the Act.  See *People v. Richardson*, 196 Ill. 2d 225, 230 (2001); *People v. Olson*, 2019 IL App (2d) 170334, ¶ 22 (finding no basis under the Act for the defendant to seek appellate relief on his claim that the trial court erred by refusing to allow the victim to withdraw her initial impact statement); *People v. Harth*, 339 Ill. App. 3d 712, 715 (2003) (finding no basis under the Act for the defendant to seek appellate relief on his claim that the trial court erred in considering the statement of a person who was not a crime victim).

¶ 25    Nevertheless, although the mere admission of victim impact statements that were not statutorily authorized is not a ground to disturb defendant's sentence, defendant argues that the provisions "do not eliminate [defendant's] constitutional right to the effective assistance of counsel or his due process right to a fair sentencing hearing."  We agree.

¶ 26    To establish a claim of the ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) counsel's actions resulted in prejudice to the defendant.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  The prejudice prong requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Generally, to establish prejudice in sentencing, the defendant must show a reasonable

probability that the trial court would have imposed a lesser sentence if his counsel had not erred. See *People v. Steidl*, 177 Ill. 2d 239, 257 (1997). If an ineffectiveness claim can be rejected because of an insufficient showing of prejudice, then the court should do so and avoid judging the quality of counsel's performance. *Strickland*, 466 U.S. at 697.

¶ 27 In this context, we judge prejudice by determining whether admission of the improper victim impact statements violated defendant's due process right to a fair sentencing hearing. In *Richardson*, although the supreme court held that "[the] defendant [was] prohibited by [the state] constitution from seeking appellate relief on the ground that more than one victim impact statement was presented and considered at his sentencing" (*Richardson*, 196 Ill. 2d at 230), the court nonetheless considered whether the admission of multiple statements violated the defendant's right to due process (*id.* at 232-33). "In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." (Internal quotation marks omitted.) *Id.* at 233; see also *Harth*, 339 Ill. App. 3d at 715-16 (considering whether admission of statement violated the defendant's right to due process).

¶ 28 Here, even if we agreed that trial counsel's failure to object to the admission of the statements was objectively unreasonable, defendant's ineffective-assistance claim fails because defendant cannot establish that any error prejudiced him.

¶ 29 Defendant argues that trial counsel's failure to object to the improper victim impact statements prejudiced him because "the victims' families played a central role at the sentencing hearing[.]" According to defendant, "the State emphasized that the families of Gaulke and Forscht have 'paid the price' for [defendant's] behavior and that [defendant] 'destroyed two families.' " Defendant further argues that "the [trial] court acknowledged that it read all of the victim impact

statements and considered the aggravation evidence in rendering its sentence." In addition, defendant maintains that "there were many mitigating factors justifying a lesser sentence." Defendant points to his "strong work ethic," "strong family ties," and "express[ion] [of] remorse for the victims['] families."

¶ 30    First, we disagree with defendant that the victims' families "played a central role at the sentencing hearing[.]" The properly admitted victim impact statements from Gaulke's sister (whose statement the State read into the record) and Forscht's husband (whose statement was included in the PSI) were only a small piece of the aggravating evidence presented. Moreover, the State's comments about the impact on the victims' "families" were, after all, appropriate because there were impact statements from family members (Gaulke's sister and Forscht's husband) who were "representatives" under section 6(a-1) of the Act. The State did not specifically reference any statements from Forscht's friends.

¶ 31    Moreover, notwithstanding the trial court's general comment at the outset of the proceedings that it had considered, among other things, "the Victim Impact Statement, *** and addendums to the [PSI]," at no point in its pronouncement of sentence did the court refer to the contents of *any* of the victim impact statements. The mere fact that the trial court read the improperly admitted statements does not establish that it was particularly influenced by those statements. See *People v. Merrick*, 2012 IL App (3d) 100551, ¶ 39 (finding no due process violation where the trial court referred to "the [improperly admitted] victim impact statements in one paragraph of an otherwise lengthy oral sentencing order"); *People v. Beck*, 295 Ill. App. 3d 1050, 1066 (1998) (finding no error where the trial court did not specifically refer to the improperly admitted victim impact statements, which were included as part of PSI expressly considered by the court). Moreover, we presume that, to the extent the court relied on the victim impact

statements, it restricted itself to the proper ones. See *Richardson*, 196 Ill. 2d at 233 ("It is well established that where a sentencing hearing is conducted before the trial court rather than a jury, the court is presumed to consider only competent and relevant evidence in determining sentence.").

¶ 32    As for the mitigating factors, the record makes clear that the trial court considered them. The court specifically acknowledged defendant's "relatively or completely law-abiding life[,]"and the fact that defendant "has worked in the past" and "had family life in the past." And, although defendant points to his remorse as mitigating, the court emphasized that "[d]efendant ha[d] never accepted responsibility for what he has done" and that "[h]e t[ook] no accountability, responsibility or otherwise for his alcoholism, which clearly is actual causation here." Evidently, in addition to the seriousness of the offense, the court found particularly significant (1) defendant's subsequent DUI arrest, during which he was "actually even drunker than he was during the night that he killed two people[,]" and (2) the fact that he was caught "clearly fleeing the jurisdiction." The court emphasized defendant's "severe" alcoholism and his lack of "interest in treating the alcoholism[.]" The court expressly found that defendant was at a "high risk to reoffend" and that the sentence was "necessary to deter others."

¶ 33    Based on the foregoing, we cannot conclude that the admission of the improper victim impact statements was so unduly prejudicial that it rendered defendant's sentencing fundamentally unfair. In other words, we cannot say there is a reasonable probability that, had trial counsel objected to the improper statements, the trial court would have imposed a lesser sentence. Thus, because defendant cannot establish that he was prejudiced by counsel's failure to object to the improper statements, his ineffective-assistance claim fails.

¶ 34                                    III. CONCLUSION

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 36    Affirmed.